**NOLTE et al. v. HUDSON NAV. CO. et al., and Three Constituent Causes.**

Circuit Court of Appeals, Second Circuit. March 18, 1929.

No. 234.

See, also, 13 F.(2d) 987; 16 F.(2d) 182.

528

Boardman Wright, of New York City, for appellant Rockwood.

Alexander & Ash, of New York City (Mark Ash and Edward Ash, both of New York City, of counsel), for appellants Conron Bros. Co. and others.

Stuart G. Gibboney, of New York City, for appellants Barber, Watson & Gibboney.

George Pfeil, of New York City (Ambrose C. Hindman, of counsel), for appellants National Surety Co. and others.

Charles H. Tuttle, U. S. Atty., of New York City (Samuel C. Coleman, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Mansfield Ferry, of New York City, for appellees Farmers' Loan & Trust Co. and others.

Taylor, Blanc, Capron & Marsh and Graham, McMahon, Buell & Knox, all of New York City, for appellees Fuller and others.

Murray, Aldrich & Roberts, of New York City, for appellee committee of holders of collateral trust 5's.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). The decree of December 1, 1925, provides that the free assets fund shall be applied to the payment of (a) allowed claims of creditors not secured by liens upon parcels A and B (whom we shall refer to as the unsecured creditors); and (b) the bonds "hereinbefore found to be outstanding and unpaid." The decree then proceeds as follows:

"Such payments shall be made ratably and proportionately to the aggregate amount of said claims and bonds among the persons holding the same, provided, however, that when and if the amount of said ratable payments so made upon said bonds, shall, to-gether with * * * the proceeds of the sale of the mortgaged property herein directed to be made applicable to and upon said bonds respectively, pay off and satisfy said bonds in full, any balance that may remain of the free assets fund shall be applied ratably upon said claims until the same shall be paid in full."

The controversy between the bondholders and the unsecured creditors is whether or not a bondholder may marshal the payments he receives so as first to apply what he collects out of his security to the payment of interest which has accrued upon his bond. If he may, the free assets fund will pay a dividend of 14 per cent. to bondholders and unsecured creditors alike. If, on the other hand, all that the bondholder receives from his security must be applied upon the principal of his bond, he will require less than a 14 per cent. dividend out of the free assets fund to pay the principal of his bond in full, and a much larger dividend may be paid to the unsecured creditors. The special master allowed the bondholders the privilege of applying collections from their security, so as to pay interest accruing both prior and subsequent to the appointment of receivers.

Most of the argument has revolved about the precise meaning of Merrill v. National Bank, 173 U. S. 131, 19 S. Ct. 360, 43 L. Ed. 640. That case decided that in an equity receivership a secured creditor may prove against the general assets of the debtor for the full amount of his claim, regardless of the value of his security, and without deducting any sums collected therefrom after the date of the receivership. It further decided that "the full amount of his claim" means the principal of the debt, plus interest thereon, if it bears interest, up to the date of the receivership. In the instant case, however, the bondholders concede that they may prove only for the principal amount of their bonds, because, under the decree of December 1, 1925, the item of interest to the date of the receivership (a relatively insignificant amount) was ignored. As already stated, this decree directed that the free assets fund be distributed between the unsecured claims and the bonds "hereinbefore found to be outstanding and unpaid"—the reference being to a finding which recited the face amount of the unpaid bonds, without including interest accrued prior to the receivership. As to the quantum of the bondholders' provable claims there is no dispute, except on the part of the appellants who are represented by Mr. Pfeil. He contends that the rule of proof should be the New Jersey rule, because the debtor cor-

poration was organized under the laws of that state—a contention which is not sustainable for reasons to be stated later.

Thus far there is substantial agreement as to the meaning of the Merrill Case. But the Supreme Court's opinion goes on to say that the secured creditor may receive dividends upon his claim, "provided that he shall not receive more than the full amount due him." To the appellants this means that he may not receive, both from his security and from his dividends, more than the full amount of his provable claim. The appellees, on the other hand, argue that the security is pledged for the payment of interest, as well as principal, and that "the full amount due him" includes interest upon the debt until it is paid. Perhaps the Merrill Case so decides. See Hitner v. Diamond State Steel Co., 176 F. 384 (C. C. Del.); Washington-Alaska Bank v. Dexter Horton Bank, 263 F. 304 (C. C. A. 9). But we do not think the question is before us. ▪ All parties agree that the present distribution must be made pursuant to the directions of the decree of December 1, 1925. That decree, as we view it, has definitely fixed the extent to which the proceeds of the security shall be applied toward payment of interest. Article twelfth, paragraph I 2, A Second, provides that the proceeds of sale of parcel A shall be applied as follows:

"Second. To the payment of the amount found by this decree to be due for principal and interest upon the Hudson Navigation 6's. and the coupons thereunto appertaining, together with interest on such amount found due from the date of this decree to the date fixed for the payment thereof at the rate of 6% per annum. If the funds applicable to such payment shall not be sufficient to pay in full the amount so due on said outstanding bonds and coupons for principal and interest, together with interest thereon from the date of this decree as aforesaid, then said funds applicable for the purpose shall be distributed among the holders of said bonds and coupons ratably to the aggregate amount of such unpaid principal and interest, without preference or priority of principal over interest or of interest over principal."

A similar provision provides for payment out of parcel B of principal and interest of New Jersey Steamboat 5's. These directions effect a marshaling of the payments derived from the security and adjudicate how much shall be allocated to principal and how much to interest. They prevent the bondholders from applying such payments to their full extent against post-receivership interest, and

avoid a decision whether under the Merrill Case this would be permissible. The collections from the security are to be applied ratably upon principal and interest, without preference or priority of one over the other. This is referred to in the paragraph dealing with the free assets fund by the phrase, "the proceeds of the sale of the mortgaged property herein directed to be made applicable to and upon said bonds respectively." The amount so directed to be applied upon said bonds—that is, upon the principal thereof— together with the dividend payable out of the free assets fund, may "satisfy [the principal of] said bonds in full." Only after this is accomplished is there any balance of the free assets fund available for an additional dividend to unsecured creditors. As we understand the schedules attached to the master's report, this interpretation of the decree may not affect the dividend payable on Hudson Navigation 6's, but will affect to some extent the amount payable on New Jersey Steamboat 5's.

▪ We now revert briefly to the contention of Mr. Pfeil's clients to the effect that the bondholders should be allowed to prove only for the difference between the face value of their bonds and the amount collected from their security, because this is the principle applicable in the state of New Jersey, which is the place of domicile of the debtor corporation. It should be remembered what the character of this proceeding is. It is not a winding-up proceeding under the statutes of the state of incorporation; it is a remedy accorded creditors by the law of the forum, in order to reach their debtor's property and apply it in satisfaction of their claims. It is a substitute for legal execution, and a means of reaching, also, assets of an equitable nature. Hence the creditor who seeks a receivership must first obtain a judgment at law, unless that requirement is waived, and the appointment of a receiver is sometimes said to be "an equitable execution." See Davis v. Gray, 16 Wall. 203, 216, 21 L. Ed. 447; Pusey & Jones Co. v. Hanssen, 261 U. S. 491, 43 S. Ct. 454, 67 L. Ed. 763; Beach on Receivers (Alderson's Ed.) § 11; 38 Yale L. J. 668. Hence, also, the distribution of the assets so seized is controlled by the court appointing the receiver, and is governed by the law of the place where the seizure takes place. This will prevail over the law of the debtor's domicile with regard to preferences between creditors. See Holshouser Co. v. Gold Hill Copper Co., 138 N. C. 248, 50 S. E. 650, 70 L. R. A. 183; N. Y. Trust Co. v.

Island Oil & Trans. Corp., 11 F.(2d) 698 (C. C. A. 2); Dunlap v. Rogers, 47 N. H. 281, 287, 93 Am. Dec. 433.

The decree must be modified in accordance with the views above expressed. The cause is accordingly remanded, with directions to enter a decree in conformity with this opinion. Half the costs in this court will be awarded to appellants against the holders of New Jersey Steamboat 5's.