**NOLTE et al. v. HUDSON NAV. CO. et al.,
and three other cases.**

No. 61.

Circuit Court of Appeals, Second Circuit.
Jan. 12, 1931.

George Pfeil, of New York City (Ambrose C. Hindman and Boardman Wright, both of New York City, of counsel), for appellants.

Arthur J. W. Hilly, Corporation Counsel, of New York City (Isaac F. Cohen and Joseph H. Miles, both of New York City, of counsel), for claimant.

Taylor, Blanc, Capron & Marsh, of New York City (Mansfield Ferry and Edward E. Watts, Jr., both of New York City, of counsel), for appellee City Bank Farmers' Trust Co.

Graham, McMahon, Buell & Knox, of New York City (Edward W. McMahon, of New York City, of counsel), for appellee National Commercial Bank & Trust Co.

Taylor, Blanc, Capron & Marsh, of New York City, for appellee Reorganization Managers.

Mansfield Ferry, of New York City, for appellee New Jersey Steamboat 5's.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

Following the remand by this court when this cause was last here, see 31 F.(2d) 527, an application was made by the attorneys for certain unsecured creditors for an allowance for counsel fees on the ground that through their efforts a fund had been preserved for distribution to the general creditors. As appears in the above-mentioned opinion, there were three classes of creditors: (1) Holders of Hudson Navigation 6's, for whose benefit funds known as parcel A were held; (2) holders of New Jersey Steamboat 5's, for whose benefit funds known as parcel B were held; and (3) unsecured creditors who were to share ratably in what was known as the free assets fund. A former decree, which will be referred to as that of December 1, 1925, was and is controlling, and provided that, when and if the funds in parcel A were exhausted before the Hudson Navigation 6's were fully paid, any balance over would share in the free assets fund. There was a similar provision as to parcel B in regard to the New Jersey Steamboat 5's. The attorneys whose petition for fee allowance was denied did not increase the total of the funds held for distribution to the creditors as a whole, but did succeed, under the decision above referred to, in having the proceeds of the security applied to bond principal so that the extent to which the bondholders may share in the free assets fund was limited and the New Jersey Steamboat 5's will not share at all. This had the effect of releasing about $42,000 already in that fund for application to the claims of unsecured creditors who would not otherwise have shared in that amount, since it would have gone to the bondholders.

These petitioning attorneys were actually employed by only 12 per cent. of the amount of the unsecured claims. While the remaining 88 per cent. will benefit ratably in the distribution of that portion of the fund which would have gone to the bondholders, the District Court refused to allow fees out of the fund to these attorneys on the ground that they had brought no new money into court for distribution, prevented none from going out, or done more than "cause the transfer of a portion of an existing sum held in court from one set to another set of the parties to the cause." In view of this, the court was of the opinion that it was without power to make the allowances. For the reasons below, we think the court, in holding as a matter of law that it was without the power, denied the petitioners a right they had to have it exer-

cise its discretion in the matter of whether or not to make an allowance. Trustees of Internal Improv. Fund v. Greenough, 105 U. S. 527, 26 L. Ed. 1157. To be sure, any allowance, in strictness should be only to creditors who have incurred expenses for the benefit of the entire class, but, "when an allowance to the complainant is proper on account of solicitors' fees, it may be made directly to the solicitors themselves, without any application by their immediate client." Central Railroad & Bkg. Co. v. Pettus, 113 U. S. 116, 5 S. Ct. 387, 28 L. Ed. 915. See, also, Colley v. Wolcott (C. C. A.) 187 F. 595.

While the result of the efforts for which an allowance is asked was not to increase the total of the funds to be distributed, as in the Greenough Case, supra, the amount to be distributed to creditors of the class to which the clients of the petitioning attorneys belonged was increased, and they were benefited exactly as much as they would have been had the free assets fund itself been increased enough to give them the added dividend on their claims. The principle on which allowances are made is broadly that those who share in a benefit which has been obtained at the expense of one, or a part only, of their number should justly share the expense by which they are enabled to benefit. Adams et al. v. Kehlor Milling Co. et al. [C. C.] 38 F. 281; Harrison v. Perea, 168 U. S. 311, 325, 18 S. Ct. 129, 42 L. Ed. 478; Woodruff v. New York, L. E. & W. R. Co., 129 N. Y. 27, 29 N. E. 251; Davis v. Bay State League, 158 Mass. 434, 33 N. E. 591. We see no reason why this should be confined to benefits which result solely from additions to the total of the fund held for distribution, or why it does not equally apply to an increase in the distributable amounts to each creditor of the class brought about by the exclusion of claims which, but for the expenses incurred, would have shared in the fund to the proportionate disadvantage of the general creditors, who, by the shutting out of such claims, have received more than they otherwise would. The petitioners have preserved the fund for application to the claims of creditors entitled to share exclusively in it, and those who have been thus benefited should share ratably in the reasonable and necessary expense. Compare McCormick v. Elsea, 107 Va. 472, 59 S. E. 411; Hutchinson Box Board & Paper Co. v. Van Horn (C. C. A.) 299 F. 424.

The application of the general rule to this case presents some difficulties. Of the unsecured claims, 73 per cent. were represented by attorneys other than the petitioners. Al-

though requiring those who benefited to share in the expense of obtaining the benefit does not conflict with the rule that every litigant must pay his own counsel fees, Burroughs v. Toxaway Co. (C. C. A.) 185 F. 435, care should be taken in each particular case to see that such a result is not brought about, Weed v. Central of Georgia Railroad Co. (C. C. A.) 100 F. 162. The theory on which the expenses as well as the benefits are to be shared rests on the assumption that those who act represent the others, Lamar v. Hall & Wimberly (C. C. A.) 129 F. 79, and so, where creditors are represented by counsel of their own choice, who do in fact act for them, they cannot be compelled to share in the expenses incurred by the employment of other counsel by other creditors, Fletcher v. Coomes et al., 52 App. D. C. 159, 285 F. 893. Of course one who has an attorney may be shown to have expressly or impliedly consented to be represented, nevertheless, by the attorneys for other creditors who alone are active and achieve the beneficial result. In that event such creditors, notwithstanding that they were nominally represented by counsel, should share proportionately in the expense.

[6] While the holders of Hudson Navigation 6's may receive from the free assets fund a portion of what would have gone to holders of New Jersey Steamboat 5's had the funds in parcel A not been applied first to principal and the funds in parcel B not been applied to extinguish the principal of the New Jersey Steamboat 5's in accordance with the decision in 31 F.(2d), supra, they do receive less in the whole on account of such litigation. The expenses for attorneys who ask for an allowance have not been of any benefit to them. On the other hand, they have been detrimental. The interests of the clients of the attorneys who are seeking an allowance are and have been adverse to those of the bondholders who, having received no benefit from their work, should not be required to pay for any part of it. Hobbs v. McLean, 117 U. S. 567, 6 S. Ct. 870, 29 L. Ed. 940; Lamar v. Hall & Wimberly, supra. Since the District Court was of the opinion that it could make no allowance as a matter of law, this cause will have to be remanded to enable it to examine the matter of allowances and determine what in its sound discretion is the fair and reasonable value of the petitioners' services and expenses in preserving a portion of the free assets fund for distribution to unsecured creditors and what each of those creditors, not represented by attorneys of their own choice who acted for them, should contribute from the benefit toward such allowance.

When the amount and manner of the payment of the allowance to the petitioners have been determined, the final decree of the distribution must needs be revised accordingly. Of course, this decree should conform to that of December 1, 1925, and with the decision in Nolte v. Hudson Navigation Co. (C. C. A.) 31 F.(2d) 527, which has already been referred to. Controversy has arisen as to the date to which interest should be computed on the claims of holders of Hudson Navigation 6's. As the principal of the New Jersey Steamboat 5's has been paid in full, those bondholders are not concerned in this. The unsecured creditors who have appealed insist that interest should be computed only to the date of the December 1, 1925, decree; while the appellees contend that the District Court was right in allowing post decree interest to the date payments were actually made. This difference of opinion has grown out of the fact that, under the fourteenth article of the decree of December 1, 1925, the special master was to fix a date for the application of funds in parcel A toward payment of Hudson Navigation 6's and of parcel B toward payment of New Jersey Steamboat 5's when the amount of those funds had been determined, and that "holders of any such bonds and coupons who shall fail to present the same for payment at the time and place specified in such notice shall not be entitled to payment out of said proceeds of sale of any interest thereon accruing after the date so fixed." No such date was ever fixed. Without it "the date fixed for the payment thereon" in the twelfth article of the same decree must be the date of actual payment, as the District Court construed it, for that alone fixed the date of payment, and it is quite apparent from that decree that interest was to be paid from its date to the date fixed for the distribution of parcels A and B; and if, as did happen in the case of Hudson Navigation 6's, the amount was insufficient to pay in full, it was provided in this same article of the decree "that said funds applicable for the purpose shall be distributed among the holders of the said bonds and coupons ratably to the aggregate amount of such unpaid principal and interest without preference or priority of principal over interest or of interest over principal," and this plainly included post decree interest.

The claim that the expenses allowed to bondholders out of parcels A and B should have been deducted from the amounts of the

secured claims as a credit is completely answered by the twelfth article of the decree, which provides for such allowances as were made and without any such deduction.

■ Error, however, entered into the computation of interest. It is not covered by the assignments, and so would not have required reversal if the decree could otherwise have been sustained. This consists in compounding interest on certain items which need not now be pointed out, for it was obviously done inadvertently and will be corrected in the new decree.

■ Finally the claim is made that holders of Hudson Navigation 6's cannot participate in the distribution of the free assets fund, and that reorganization managers for the bondholders who bought up a large amount of unsecured claims likewise cannot share in it. This is based on some unexplained theory that is against public policy. Of course the purchase of unsecured claims by those whose major interest was in behalf of the bondholders did put the ownership of such claims into the hands of those who would be likely to favor a course of action that would most benefit the bondholders, but how it could be thought that the right of a bona fide owner of a valid unsecured claim to share in the free assets fund is dependent upon the character of other claims he may hold cannot be perceived. The right of holders of the Hudson Navigation 6's to share in it was settled by the decree of December 1, 1925, since that contingency was provided for and has arisen in view of the fact that the proceeds of their security known as parcel A was not sufficient to pay them in full in accordance with that decree under our decision in Nolte v. Hudson Navigation Co., supra.

Order and decree reversed, and cause remanded for proceedings in conformity with this opinion.