*In re* NEW YORK INVESTORS, Inc.

RECONSTRUCTION FINANCE CORPORATION v. ENDELMAN et al.

Nos. 492, 493.

Circuit Court of Appeals, Second Circuit.

July 22, 1935.

Root, Clark, Buckner & Ballentine, of New York City (William P. Palmer and Everett I. Willis, both of New York City, of counsel), for appellant.

Edward Endelman. of New York City, pro se.

Powell & Ruch, of New York City (Clinton J. Ruch, of New York City, of counsel), for appellees Powell & Ruch and Charles H. Kelby and Clifford S. Kelsey, as trustees.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The appellees Kelby and Kelsey were appointed equity receivers of New York Investors, Inc., on July 14, 1933, and remained such until January 7, 1935. Their work thus covered about eighteen months, and upon its termination they became trustees in the reorganization proceeding instituted by the debtor under section 77B of the Bankruptcy Act (11 USCA § 207). On June 29, 1934, they were appointed trustees of Prudence-Bonds Corporation, a subsidiary of New York Investors, Inc., in a similar reorganization proceeding, so that their time was considerably occupied during the final six months of the receivership. of the latter company in the affairs of the Prudence-Bonds Corporation. The receivership of New York Investors, Inc., was particularly difficult because of the numerous large subsidiaries of which it owned the stock and the intricate relations of these subsidiaries with the debtor and in many cases with one another. Proper administration of the receivership by the receivers and their attorneys Powell & Ruch required constant attention, as well as skill and training of a high order. Judge Kelby and Mr. Kelsey have each received an interim allowance of $20,000. The former has been awarded $25,000 more and the latter $10,000 more as final allowances. Each allowance was fixed by the court which had appointed the equity receivers, and was thereafter ordered paid from the debtor's estate by the court in the 77B proceeding. The same judge who had charge of the estate from the beginning made the orders in each court.

The Reconstruction Finance Corporation, a secured creditor having a claim of $20,000,000, intervened in the 77B proceeding and objected to the foregoing allowances, as well as to the others we shall discuss, on the ground that they are excessive. It has chiefly objected to any final allowances at this time, when the prospects of a reorganization are yet uncertain and the yield of the estate in reorganization or, if reorganization shall fail, in liquidation, cannot be foreseen.

■ In an opinion denying the motions by the appellees to dismiss the appeals by the Reconstruction Finance Corporation, which is to be filed herewith, 79 F.(2d) 179, we have held that the court in the reorganization proceeding was authorized under section 77B (i) of the act (11 USCA § 207 (i) to reduce the allowances fixed in the equity receivership, if they were found to be unreasonable. There remain for consideration the questions whether only ad interim allowances should be made at present and whether, in case final allowances are appropriate at this time, those granted have been too large.

Although section 77B (i) only provides for "payment of such reasonable administrative expenses and allowances in the prior proceeding as may be fixed by the court appointing said receiver or prior trustee" and does not in so many words authorize ad interim payments, we have no doubt that the section 77B court may employ any fair method to determine what allowances are "reasonable," and to that end may authorize payments on account if it is otherwise difficult to determine what under the circumstances is proper compensation. But here the work in the receivership is completed, there are ample assets with which to pay the expenses of the receivers, and we can see nothing to be gained by delaying a final settlement. We therefore shall dispose of the allowances at the present time.

■ Judge Kelby during the first three months of the receivership not only performed all the usual services of a receiver, but substantially all legal services required, and apparently gave the receivership a great part of his time. During the last six months of his tenure he also acted as trustee of the Prudence-Bonds Corporation and in that capacity will be entitled to remuneration. In view of the fact that the receivership had free assets of only about $1,200,000 and that the total assets, of a book valuation of $42,000,000, are of uncertain value and are to a great extent pledged to the appellant, an allowance to

Judge Kelby of $37,500 seems more reasonable than that awarded by the court below. We accordingly reduce the total of $45,000 to $37,500, and direct a further payment to him of $17,500, instead of $25,000.

Mr. Kelsey's allowance by the court below, if reduced in the same way, would aggregate $25,000, and the further payment to him would amount to $5,000. His work for the receivership seems to have been largely concerned with attending to claims filed with the receivers and with care of the bank accounts and office of the debtor. As this work was divided with work for the Prudence-Bonds Corporation or as trustee thereof, and as he seems to have had no individual office expenses, we think such allowance reasonable. Accordingly, the total allowed to him is reduced from $30,000 to $25,000, and a further payment to him of $5,000, instead of $10,000, is directed.

The compensation awarded to Messrs. Powell and Ruch seems far too large. Though we realize the difficulty and intricacy of the problems with which they have had to deal and the training and skill necessary for their solution, they were engaged on this receivership for only fifteen months, and received an ad interim allowance of $32,500, and during the same period were paid $25,000 by the receivers out of collections on the so-called Ringling collateral by virtue of the terms of the collateral agreement. While this payment did not come out of the estate, it represented compensation for services for the same period during which they are seeking remuneration from the estate. During the last six months of the time they have also been counsel for the trustees in the Prudence-Bond Corporation reorganization, and will be entitled to compensation for services from the estate of that company. They also intend to apply for an allowance of $15,000 in connection with the plan of reorganization of Allied Owners Corporation, and have had an allowance of $3,000 awarded to them in the reorganization of the Prudence Company; each of those corporations being subsidiaries of New York Investors, Inc. They set forth, as do the receivers, voluminous services in ascertaining the financial condition of the various subsidiaries. Undoubtedly it was necessary to perform at least many of these services, but they were largely of a preliminary nature, and the most important work of this sort will be in connection with the reorganizations, if and when they take place. In such circumstances, an allowance of $50,000 to Powell & Ruch for their services over and above the $25,000 they have already received out of the Ringling collateral will be ample compensation. They have already received $32,500, and should be allowed only $17,500 more, instead of the $75,000 awarded by the court below, as full compensation for their services. We accordingly direct a further payment to them of $17,500.

The Supreme Court has given notice on more than one occasion that receivers and attorneys engaged in the administration of estates in the courts of the United States and in litigations affecting property within the jurisdiction of those courts should be awarded only moderate compensation, and that many of the allowances heretofore awarded have been too high. In Newton v. Consolidated Gas Co., 259 U. S. 101, 42 S. Ct. 438, 66 L. Ed. 844, the compensation granted to the master by the lower courts was cut nearly in half. In United States v. Equitable Trust Co., 283 U. S. 738, 51 S. Ct. 639, 75 L. Ed. 1379, the allowances fixed by the District Court for attorneys, who had recovered a fund for the benefit of an incompetent Creek Indian, were reduced almost 73 per cent., and those granted by this court by 50 per cent. A similar attitude toward extravagant fees and a determination to hold parties connected with judicial administration to moderate ones is evidenced by the recent opinion of Justice Cardozo in Realty Associates Securities Corp. v. O'Connor, 295 U. S. 295, 55 S. Ct. 663, 79 L. Ed. 1446. These declarations of policy by a tribunal which is controlling upon the lower courts must be kept constantly in mind in dealing with judicial allowances—a subject difficult and unsatisfactory because of lack of any definite standards.

We can readily imagine that our reduction of the fees of counsel by more than 50 per cent. may be regarded as drastic in view of the "overhead" necessary for the conduct of a large and intricate receivership like the one before us. But there is no claim that any persons except the two partners and an assistant were engaged in performing the

services in question, and their office was engaged in other matters outside of the receivership and was earning other substantial fees that are both in esse and in posse. Moreover, it should be remembered that the work of receivers and counsel in equity receiverships was to some extent only preliminary and that they are representing the estate of the debtor in the section 77B proceeding. They will hereafter be entitled to substantial compensation for work of more vital import in connection with the reorganization, if it proves successful.

■ The final objection raised by appellant is to the allowance from the estate of the debtor to the appellee Edward Endelman. It was fixed by order of March 1, 1935, in the equity receivership, and directed to be paid by order in the section 77B proceeding of March 22, 1935. This allowance was in addition to a prior one of $3,000 which was made on April 13, 1934. Mr. Endelman was never attorney for the receivers, nor was any order made authorizing him to act on their behalf. He represented an intervening protective committee for the preferred stockholders of the Prudence Company, whose 7 per cent. annual dividend was guaranteed by New York Investors, Inc. Although he frequently assisted in matters arising during the administration of the estate, his services seem to have been such as were properly within the duties of the attorneys for the receivers, except those which related primarily to securing and increasing the interest of the creditors whom he represented. No claim is made that the services of the receivers and their counsel were not capable or adequate and they have been, or are to be, awarded substantial compensation for their work. Under the circumstances, it is well settled that services by the attorneys for an intervener, however meritorious, cannot be paid out of the general estate. Louisville, Evansville & St. Louis R. Co.

v. Wilson, 138 U. S. 501, 11 S. Ct. 405, 34 L. Ed. 1023; Davis v. Seneca Falls Mfg. Co., 17 F.(2d) 546 (C. C. A. 2); Weed v. Central of Georgia R. Co., 100 F. 162 (C. C. A. 5).

In Nolte v. Hudson Nav. Co., 47 F.(2d) 166 (C. C. A. 2), the attorney for part of the unsecured creditors was allowed payment out of the share which went to the creditors of that class, but his services there resulted in a definite addition to the share of all unsecured creditors, and were rendered in a controversy in which apparently the receiver could not properly take part. He nevertheless was not allowed compensation from the general estate.

■ Mr. Endelman contends that the order directing payment of his allowance cannot be revised because the appeal, if of any validity, was taken under section 24b (11 USCA § 47 (b) of the Bankruptcy Act, and any revision of the allowance under section 24b must only be based on errors of law. This contention is without merit, for the facts are not disputed, and the question raised is whether an allowance could be granted to the attorney for an intervener who did not and was not authorized to act for the receivers. This is the question of law which we have decided against the appellee Endelman.

The order granting an additional allowance of $20,000 to Mr. Endelman should be reversed. If we are correct in our understanding as to the $3,000 which he has already received as an ad interim allowance, the trustees should take steps to secure the refund of that amount from Mr. Endelman.

The order in respect to the allowances of Messrs. Kelby and Kelsey and their attorneys Powell & Ruch is modified in accordance with the terms of this opinion, and the order for compensation of Mr. Endelman is reversed.