### CLARK et al. v. GOLDMAN et al.
(two cases).

No. 85.

Circuit Court of Appeals, Second Circuit.

Dec. 22, 1941.

**492**

Edward F. Clark, of New York City, and Leonard J. Reynolds (John A. Shorten, Albert B. Gins, all of New York City, of counsel) for appellants.

Thomas Keogh, of New York City, and Barnet Kaprow and Edwin A. Tennant, pro se for appellees creditors' committee.

Willian A. Shea and Samuel Boksenbom, both of New York City, for appellee the New York Superintendent of Insurance.

Before L. HAND, CLARK, and FRANK, Circuit Judges.

**L. HAND, Circuit Judge.**

The plaintiff's attorneys in two representative creditors' actions appeal from a joint order made in both actions denying them any additional allowance for their services. The actions were begun on August 18, 1933, at the suggestion and request of the New York Superintendent of Insurance; the defendants consented to judgment and receivers were appointed on the same day and qualified at once. They resigned during the long course of the litigation and others were substituted; all have been either assistants of the Superintendent, or have acted in harmony with him. The defendants were corporations, wholly-owned subsidiaries of the New York Title and Mortgage Company, which used them as dummies in realizing upon its assets—mortgages on real estates. When any mortgages were foreclosed, the property was taken over in the name of one of the defendants which held it in trust for those individuals to whom the New York Title and Mortgage Company had either assigned the mortgages, or had issued "participation certificates" in them. The parent company became unable to fulfill its obligations and went into a "rehabilitation," as it was called, in the state court of which the Superintendent of Insurance had charge. Believing it to be in the interest of all to liquidate the subsidiaries in representative creditors' actions in a federal court, he procured the institution of the actions at bar. The liquidation of the properties took nearly eight years, but was finally accomplished by the acceptance of "plans" by the District Court under which the secured creditors took over all the properties at a bid price, agreeing to pay in addition all expenses of administration including allowances to attorneys. The attorneys for the plaintiff—the claimants here—who had received $11,500 as interim allowances, made a single application in both actions for a further allowance which the judge denied. This appeal is from that order.

There were two groups of creditors of the defendants—secured and unsecured—of which the first were by far the more numerous; against the defendant, Liberdar company, secured claims were proved of about $3,400,000, and unsecured, of about $47,000; against the defendant, Land Estates, Inc., secured claims were proved of about $2,500,000, and the unsecured, of about $21,000. The security for the secured claims in the case of Liberdar was appraised at about $2,800,000, and in the case of Land Estates, Inc. at about $2,330,000. The claimants busied themselves about many things during the course of the receivership, and the appeal turns upon which, if any, of their services they may be paid for. The liquidation of the estate involved a multitude of details; among other matters the liens upon the real estate owned by the defendants were being constantly foreclosed; and the disposition of these and other controversies required a great deal of negotiation and supervision. The claimants regarded themselves as charged with a duty to supplement the work of the receivers, and in general to oversee the progress of the actions; and a large part of the services for which they claim were of this kind. They also appear to have concerned themselves with the changes in receivers, at each of which the retiring receiver presented his accounts to be passed by the court; but their chief claim is for services rendered in a litigation which they pressed through the District Court and this

court to determine the distribution of the unincumbered assets. On behalf of the unsecured creditors they unsuccessfully attempted to secure a ruling that the secured creditors must credit upon their claims against those assets the appraised value of their security, instead of proving for the full amount of the claim. Prudential Insurance Co. v. Land Estates, Inc., 2 Cir., 110 F.2d 617. No committee of creditors was formed until 1938—near to the end of the liquidation period—and then only for the secured creditors. Thus the unsecured creditors never had any representatives at any time except as the plaintiff and the claimants were such. They say that, in spite of their failure to reduce the secured claims by the value of the security, the result of the litigation was to increase the amount of the secured creditors' bid, and raise the dividend of the unsecured creditors by nine per cent. This is nowhere denied, and while it appears to involve only about $6,000, upon this record the unsecured creditors do appear to have benefited by their efforts to that extent.

Earlier decisions under representative creditors' actions customarily treated the plaintiff as in general charged with protection of the estate until a receiver was appointed, and allowed his solicitors for their services. Indeed, the courts at times went further, and made an allowance for such services even after a receiver was appointed. Burden Central Sugar-R. Co. v. Ferris Sugar-Mfg. Co., 5 Cir., 87 F. 810; Bowker v. Haight & Freese Co., 2 Cir., 170 F. 67; Edwards v. Bay State Gas Co., C. C.Mass., 172 F. 971; Robinson v. Mutual Reserve L. I. Co., C.C.S.D.N.Y., 182 F. 850, 864; Muskegon Boiler Works v. Tennessee Valley I. & R. Co., D.C.M.D.Tenn., 274 F. 836. In none of these cases does it seem to have been noticed that if the receiver was doing his duty, this resulted in a quite unnecessary duplication of services with corresponding increase in administration expenses; that is, that if the estate is under the receiver's protection, there is no good reason why the creditors at large should be saddled with the expense of a double administration until it is shown that he is neglecting his duty. For that reason intervenors who have claimed for similar duplication of services, have not succeeded, even though they may have benefited the estate; they must satisfy the court at the outset that the receiver needs their help. Davis v. Seneca Falls Mfg. Co., 2 Cir., 17

F.2d 546; Reconstruction Finance Co. v. Endelman, 2 Cir., 79 F.2d 182, 186. The same doctrine prevails in bankruptcy. Thus, although we held in In re Medina Quarry Co., 2 Cir., 191 F. 815, that the petitioning creditors might have an allowance under § 64, sub. b(2), 11 U.S.C.A. § 104, sub. b(2)—as it then was—for helping to recover property transferred by the bankrupt, all the work for which they were allowed had been done before the trustee was appointed. On the other hand in In re Eureka Upholstering Co., Inc., 2 Cir., 48 F. 2d 95, we refused any allowance whatever to a petitioning creditor's attorney who would have been entitled to one, had he shown to the court that the receiver would not, or could not, do the work himself. Essentially the same situation exists when a single member of a class in a reorganization proceeding duplicates the work of a committee —whether the proceeding arises under § 77B, 11 U.S.C.A. § 207 (In re Paramount Publix Corp. (Palmer v. Paramount Pictures), 2 Cir., 85 F.2d 588), or Chapter X, 11 U.S.C.A. § 501 et seq. (In re Porto Rican American Tobacco Co., 2 Cir., 117 F.2d 599). We also refused any allowance to a bondholders' committee in a reorganization proceeding under § 77B, for services duplicating those of a trustee in the ordinary details of administration. Sartorius v. Bardo, 2 Cir., 95 F.2d 387. We can see no support for the view expressed in the earlier cases, all of them now twenty or more years old, that the plaintiff in a representative creditors' action after a receiver has been appointed should be in a different position from an intervenor, or a petitioning creditor in bankruptcy; and we hold that if his attorney proposes to make any claim for services in aid of the receiver's administration, he must secure an order of the court in advance authorizing him either to supplement, or to supplant, the receiver pro hac vice. If he fails to do this, any such services are on his client's—the plaintiff's—own account.

Among administration services must be reckoned all that concern, not only controversies between the whole group—creditors and shareholders—and third persons, like the reclamation of assets and the enforcement of the group's claims against outsiders; but also any disputed claims of individuals against the group itself, since these are really efforts by the claimant to become a member of the group, whether the claim be secured or unsecured. However,

while as to all such the receiver's responsibility is prima facie exclusive, this ceases to be true as soon as it is improper for him to take sides in a controversy between two conflicting classes within the group itself. The conflict in the case at bar was one of these; the security of the secured creditors was undisputed, so were the amounts of their claims and of the claims of the unsecured creditors. The litigation was to determine only the distribution of the unincumbered assets between the two groups, and as to that the receiver could not properly take sides, for he represented the secured creditors as much as the unsecured. Had there been a committee of unsecured creditors, it might well have supplanted the plaintiff under the principle of such cases as In re Paramount Publix Corp. (Palmer v. Paramount Pictures), supra, 85 F.2d 588 and In re Porto Rican American Tobacco Co., supra, 117 F.2d 599; but there was no such committee, and nothing to deprive the plaintiff of its ordinary power under Rule 23(a) (3), 28 U.S.C.A. following section 723c, to represent the class as a whole. Nolte v. Hudson Navigation Co., 2 Cir., 47 F.2d 166; In re Consolidated Motor Parts, 2 Cir., 85 F.2d 579; Crump v. Ramish, 9 Cir., 86 F.2d 362. The case must therefore go back to try out whether the claimants' efforts really did result in an increase in the dividend of the unsecured creditors; and if so, by how much. Any allowance granted must be based upon the benefit so conferred upon the unsecured creditors alone, for obviously the secured creditors, who were the bidders, could gain nothing by the contest; indeed, its purpose was to diminish their dividend. Moreover, it follows from what we have already said that the claimants should receive nothing more than they already have for any services in aid of the receiver; indeed, it might be argued, since they were entitled to no allowance for those services in the first place, that past payments should be brought into hotchpot as a credit against any allowance now to be made. We will not however go so far. The earlier payments were made under orders which were not appealed, and regardless of any power we may possess to make them cover other services than those for which they were given, it does not seem to us fair now to exercise it.

We dispose of the case as though the unincumbered assets were still in court awaiting distribution; because, while that is not true, the case must be decided as though it were. The purchasers in taking over the unincumbered assets agreed to pay all allowances, and in so doing substituted their promise for the funds they received.

Order reversed; causes remanded for further proceedings in accordance with the foregoing.