### STRAUS et al. v. BAKER CO. et al.*
### No. 8152.

Circuit Court of Appeals, Fifth Circuit.
Jan. 6, 1937.

*Rehearing denied 88 F.(2d) ——.

Allen Wight and Robert Allan Ritchie, both of Dallas, Tex., and Ulysses S. Schwartz and Claude A. Roth, both of Chicago, Ill., for appellants.

Alfred McKnight, of Fort Worth, Tex., Carl B. Callaway, of Dallas, Tex., and Sylvan Lang, of San Antonio, Tex., for appellees.

Before SIBLEY and HUTCHESON, Circuit Judges, and STRUM, District Judge.

HUTCHESON, Circuit Judge.

After judgment of foreclosure had been obtained on its first mortgage bonds, Baker Company, the debtor, filed a petition for reorganization under section 77B, Bankr.Act (11 U.S.C.A. § 207). This appeal is from an order entered in that proceeding under the authority of paragraph 9, subdivision (c), of section 207, Title 11 U.S.C.A.[1] allowing and disallowing compensation for claimed services.

The allowances complained of were made to Dee et al. as representatives of the stockholders who had acquired their stock by foreclosure of collateral pledged by the Baker interests to Fenton J. Baker as reorganization trustee, to Callaway & Reed as attorneys for Baker Hotel Company, and Fenton J. Baker, as trustee, and to Sylvan Lang et al., attorneys for the debtor. The disallowance complained of was as to Straus, as trustee in the bond mortgage and as trustee in the reorganization proceeding.

The appeal presents the same division of interests with its frictional tendencies to generate more heat than light, which in its final stages attended the proceedings below. It ranges, as was the case below, the bondholders, their trustee, their representatives and attorneys on one side, and on the other the debtor, its attorneys and stockholders, the latter divided into the Dee and the Baker interests. The order complained of made allowances to all of those making request on the bondholder side except Straus. These allowances, though less than asked for, were substantial in amount, and since no one complains of them here, either as excessive or as inadequate, they must be taken as having been accepted by both sides of the controversy as proper and adequate.

Straus complains of the order as to him, because it denied his request for compensation, on the ground that his participation in what was referred to throughout the proceedings as the National Hotel Company's cash proposal, disentitled him to claim any. All of the allowances made to those on the debtor's side are challenged, some in part, and on the ground of excessiveness, others in whole, and on the ground that there was no warrant in law for any allowance.

The allowance to Callaway & Reed as counsel for the Hotel Company and Baker,.

[1] Subdivision (c), par. (9) "May allow a reasonable compensation for the services rendered and reimbursement for the actual and necessary expenses incurred in connection with the proceeding and the plan by officers, parties in interest, depositaries, reorganization managers and committees or other representatives of creditors or stockholders, and the attorneys or agents of any of the foregoing and of the debtor, but appeals from orders fixing such allowances may be taken to the Circuit Court of Appeals independently of other appeals in the proceeding and shall be heard summarily."

trustee, is contested mainly on the ground that rule 44 of the General Orders in Bankruptcy (11 U.S.C.A. following section 53) promulgated by the Supreme Court required a formal appointment as attorneys for the trustee upon a verified petition, showing that they represented no adverse interest, whereas here they had not been appointed at all, and could not be for they represented an interest, that of Fenton J. Baker, adverse to the estate, and further, were really acting for him personally, and should therefore look to him for their compensation.

The allowance to Dee et al. as the committee for the noteholders, which, by foreclosing notes secured by Baker Hotel stock, claimed to have gotten the Baker stock interests, is contested on the ground that the services they rendered were not in the interest of the estate, but of their group, which should have compensated them, and that in any event they were excessive.

As to Baker, trustee, the ground of opposition is that in view of his interested position as a contender for an equity, and the very satisfactory recognition accorded him in the reorganization plan, he should have had no additional compensation.

As to the counsel for the debtor, the claim is made that the allowance is erroneous, in that the greater part of their time and work was of a business nature, not compensable as legal services under the invoked section, and that considering their legal services alone, the greater part of them were rendered not to the estate, but for, and they inured to, the benefit of Dee and the noteholders' committee, and the personal interest of the debtor; that they therefore should be compensated only in part out of the funds dedicated by the plan to the bondholders, looking to the Dee committee and the debtor for the major part of their compensation.

The attorneys for the debtor countering appellants' claim urge that the allowance to them was neither unreasonable nor excessive, for it was through their services, all of which they say inured to the benefit of the estate, that the estate was saved from being destroyed by the activities of the bondholder interests, all of which they say were inimical to it. They urge especially that their activities in preventing the bondholders' committee from selling the property, in consummation of the National Hotel's cash plan, and their services in formulating and finally in bringing all parties into agreement with, the final plan, fully justifies the fee they were awarded, because those activities, if the plan works out, and they say it will, will have saved the bondholders themselves nearly one million dollars on their bonds, in addition to saving the debtor about a million dollars on its equity.

Dee et al. insist that their activities in regard to their own interests did not in any manner prejudice the estate, but on the contrary were of the greatest value in unifying and bringing opposing interests into accord, and in finally bringing about a reorganization plan which has inured greatly to the benefit of the estate, that is, to the benefit of all persons having interests in it.

Baker denies that he made any agreement which would prevent his claiming or receiving additional compensation for his services as trustee. He insists that the allowance to him is reasonable, and that his efforts as trustee over and above those as manager have redounded to the interest and benefit of the estate, and should be compensated.

Callaway & Reed insist that the invoked bankruptcy rule requiring a formal appointment on a written petition, with a showing that the attorneys for the trustee do not represent any adverse interest, do not apply to a reorganization proceeding, and that it was proper for the court to allow them the challenged fee. They insist that the amount allowed is only reasonable pay for the numbers of things they did in advising the trustee as his attorneys during his management and conduct of the estate made greatly difficult by the obstructive tactics and conduct of the bondholder interests.

Thus in the windup, as in the beginning of this proceeding the diversity of interests between bondholders and debtor, and between the Baker and Dee interests, opposing groups in the debtor's own household, have been emphasized and aggravated, with the result that everything that each has done in the progress of the proceedings has appeared to the other as action looking to the protection of that special interest, rather than to the protection of the estate as a whole. The bondholders' committee from the beginning of the foreclosure proceedings which preceded the reorganization took the position that the property would not pay off the bonds, that

there was therefore no equity for the debtor, but the bondholders, with bonds aggregating the principal sum of $2,825,000, which when reduced to judgment, principal, and interest aggregated $3,136,977.85, with interest from February 27, 1934, at the rate of 7 per cent., were the real owners of the estate.

On their part the debtor and debtor interests insisted from the beginning that the property was a very valuable one, that given time, it would pay out, and that with a fair plan of reorganization there was a substantial equity in it for the stockholders.

Further complicating the situation in the beginning was the fact of internal controversy between Dee, Bitting & Hargrove on the one side, and the Baker interests on the other. From the beginning the Baker interests, represented by Fenton J. Baker, were insisting that notwithstanding the foreclosure, they must be recognized in any reorganization proceeding as beneficial owners of the major stock interest. As the result of these controversies and the spirit and feeling they engendered, the plan of reorganization was making small progress when the bondholders' committee, finding a purchaser for the property at a figure which, with the cash in hand, would net them over $2,000,000 or between 70 and 75 cents on the dollar in cash for the bonds, made a tentative contract, subject to the approval of the court, to dispose of the proceedings by the acceptance of that cash offer. Confronted by this peril to their claims of, and upon, the equity, the bondholders being in a position by solidarity of interest to prevent the adoption of any plan which did not properly protect them, and having by the actual offer made it clear that they could get over two millions in cash for their $2,800,000 of bonds, the debtor interests immediately joined their forces and made a common front. This consisted in part of applying to the District Judge for and obtaining an injunction against the bondholders' committee, restraining them from submitting the cash offer to the bondholders, and from taking any further steps to go through with the proposed cash offer plan, and in part of the formulation and presentation by the debtor interests of a plan which, in contrast with the original plan they presented, gave frank and liberal, instead of niggardly and covert, recognition to the predominance of the bondholder interests. Sobered, and brought by these real blows to a recognition of the common interest of all in the estate, the properties and business of the hotel, and under the influence of the wise and sound admonitions of the District Judge,[2] real negotiations commenced, and before long a plan acceptable to all was brought forward and settled by decree.

One of the provisions of this approved plan was that out of the moneys on hand $10 in cash on each $100 of bonds should be first paid to the bondholders and after all fees and disbursements had been paid, any balance should also go to them.

It was provided further that if the amount on hand was not enough to pay all fees and disbursements, the new company should furnish the balance by taking it out of its net income after the interest, but before the sinking fund, had been provided on the bonds. The fees and expenses amounting in all to $184,535.93, of which $167,950 was fees, took the whole sum of $139,042.01 remaining on hand, and $45,493.92 more paid in by the company. The interests who opposed below and oppose here the allowances have therefore a clear right to do so, for it is the bondholders' money which has been taken for the fees. Though, therefore, it may be that if the plan works out they will get it back in the full payment of the bonds, as the matter stood, and still stands, on the record the allowances were in fact out of the funds which would otherwise have gone either to pay or to provide a sinking fund for the bonds, and those who here complain of the allowances have a right to complain of them.

In making the allowances the District Judge was greatly influenced by his expressed view that the prime purpose of the reorganization statute was to aid debtors to rehabilitate themselves. He thought that the attitude of the bondholders had been obstructive and destructive of this

---

[2] "If I am right in holding that the Baker Hotel is not insolvent, it is my view that the bondholders can defeat any plan of reorganization proposed by the debtor; and, on the other hand, that the debtor and stockholders and general creditors can defeat any plan offered by the bondholders; so it looks like it would be to the interest of all to get around the table, in the right spirit, and use some sense and come to a plan of reorganization fair and equitable to all, or find a buyer for the property for what it is worth."

end, the attitude of the other interests co-operative and constructive toward it.[3] He therefore denied Straus any compensation, and based the compensation allowed the debtor's attorneys largely on his opinion of the difficulties and value of the services they had rendered in opposing the bondholders' attempt to have the cash plan adopted. He said of the allowance to the debtor's attorneys: "There would have been no excuse and no justification whatever for any such fees had it not been for the almost indescribable amount of work which was imposed upon the debtor by the unfortunate occurrence (referring to the cash sale proposition, and the efforts of the bondholders to, secure its approval) and the widespread determined opposition to such reorganization."

Here appellants earnestly insist that the District Judge misapprehended the situation in ascribing to them alone selfish and interested motives, and making fee allowances accordingly. They insist that a reading by this court of the briefs and the long record of these at times bitterly contested proceedings, from the detached point of view made possible to an appellate court by a cold written record, will show clearly that not one, but all of the contestants have been driving for and seeking to bring about a result beneficial to the interests they represent, and that the bondholders interests in doing so have acted no more improperly, or selfishly, no less within their rights, than any other interests. More, they insist, that by the steps they took though in their own interest, they furthered and brought to fruition the finally accepted plan. They insist that each interest should therefore be compensated only in part from the funds, which, under the plan, were to be disbursed for fees properly and legally allowable under subdivision (c) (9), and for the balance of their compensation each should look to their respective interests. Appellants point to the fact that it was the stockholder interest controversy which, preventing for some months the reaching of an agreement, forced the bondholders to develop a plan of their own, to wit, the cash purchase plan, and this in turn forced the debtor interests to lay aside their private quarrel and to devote themselves seriously to their obligation to propose a plan which, in keeping with their claim that the Hotel Company was solvent, and there was an equity in the hotel property, provided for caring for the bondholder interests much more substantially than had been the case in any of the proposals the debtor interests had theretofore put forward. They insist, in short, that their cash plan proposition, instead of being a detriment to the estate, resulted in its benefit, for it made the factions contending over the equity see the necessity of arriving at some mutually satisfactory understanding. And finally, they insist that it was their agreement, and that of the other parties at interest to a reasonable plan when it was finally presented, and not the legal services of debtor's counsel, which brought the proceedings to a satisfactory conclusion.

It thus appears that the questions raised by this appeal are not mere questions of amounts, that is, questions of what amount should be allowed for services whose nature and character, and whose status as obligations of the estate are unquestioned. They go deeper. They involve the general principles governing the making of compensation allowances in reorganization proceedings. Indeed, the contentions here

---

[3] In his oral opinion delivered in connection with the approval of the plan in March, 1935, the judge said: "Now what was the primary aim of Congress in 77B [11 U.S.C.A. § 207]—the benefit and relief of debtors; an opportunity for their rehabilitation of course. There has even been a controversy here about that, as to what were the primary purposes in passing 77B, it actually being contended that the primary purpose of this Act was the protection and relief of creditors. It was a reconstruction measure. That such is not its primary purpose is the very feature that makes it, in a true sense, one of the "New Deal" measures. Heretofore when there were such financial difficulties and the matter went into court, the creditors were the chief concern, of course, in the administration of the properties and the debtor's interest only incidental. It is exactly reversed in all of these Bankruptcy Acts."

At the same time, in discussing the cash sale plan, and the attitude of the bondholders, he stated: "All of the circumstances rather lead inescapably to the conclusion that the contract was a pure makeshift, designed by the leaders to serve the selfish financial interests of certain individuals and groups, but chiefly to defeat the debtor's plan for reorganization, and to deny it every right and opportunity for rehabilitation as guaranteed to it by 77B and of which it was at the very time, seeking to avail itself by proper procedure in this court."

go to, they require, an analysis and understanding of subdivision (c) (9) in the light of the settled principles prevailing in equity and in bankruptcy generally, in regard. to allowances, to determine to what extent allowances under this section are governed by those considerations, and to what extent different considerations enter into them.

■ Both sides assume, except as to the fees allowed Callaway & Reed, and we think they are correct in assuming, that the allowance of fees in reorganization proceedings is not directly governed or controlled by the statutes applicable in general bankruptcy proceedings, and that it was intended by the section to authorize the court, as to reorganizations, to make reasonable allowances for services rendered the estate in connection with the reorganization plan, in the exercise of a wise, a sound, and an informed discretion. Thus, though in reorganization proceedings no allowance may be made to a trustee for his services as trustee in bankruptcy except as the bankruptcy statute provides, Reconstruction Finance Co. v. Callaghan (C.C.A.) 79 F.(2d) 187; Callaghan v. Reconstruction Finance Corporation, 297 U.S. 464, 56 S.Ct. 519, 80 L.Ed. 804, for his services as reorganization trustee not the bankruptcy statutes, but the reasonable discretion of the court, fixes and determines his compensation. The very wideness of the description of those to whom compensation may be allowed makes it plain, we think, that this section of the statute is intended to be the authority and basis for. court allowances without limitation by the bankruptcy statutes, except that all allowances should be made bearing in mind the spirit and purpose of the bankruptcy statutes, to keep administration costs to the lowest reasonable levels.[4] In that spirit, and guided by analogous proceedings in equity, it was intended to reasonably compensate out of the funds of the estate those and only those, whose services were deemed by the court to have been of benefit to it. It was not intended that attorneys, committees and others should be compensated out of the estate for services rendered and inuring solely to the benefit of their own clients, and not to the benefit of the estate at large. The language of the subdivision, taken in connection with the whole context, makes it plain that its purpose was, looking upon the funds and properties gathered and dealt with in the reorganization proceedings, as the estate, to provide for charging upon it compensation for services rendered, or generally beneficial to all of the sets of interests in it with which the statute deals.

We think it equally plain that it was not intended to charge upon it fees for services rendered and only beneficial to, particular interests. This does not mean, of course, that merely because a particular course or a particular action might have been taken for, or particularly beneficial to, an individual interest as well as to the estate as a whole, the estate may not be charged on account of it. It does mean, however, that in making allowances out of the estate the benefit to the estate as a whole should alone be considered, the claimant being remitted for the balance of his pay to the particular client for whom the service was performed.

■ It is plain, too, that it is not contemplated by the statute to allow to every creditor and claimant, and the attorneys for every claimant or creditor, every committee and the attorneys for every committee, compensation out of the fund for their actions and activities in connection with the proceeding.[5] Particularly must claims for allowances be carefully scrutinized where there is undue multiplication of committees, of counsel and of representatives in general.[6] Indeed, in these proceedings, in the interest of protecting the estate against inordinate and claimants in reasonable claims, a proper practice would be to make no allowances to committees and their counsel except to those whose position as acting in the common interest is approved by the court in advance of the rendition of services for which claim is to be made. Also just as in bankruptcy, the trustee may be al-

---

[4] In re New York Investors (C.C.A.) 79 F.(2d) 182; Realty Associates Securities Corporation v. O'Connor, 295 U.S. 295, 55 S.Ct. 663, 79 L.Ed. 1446; Callaghan v. Reconstruction Finance Corporation, supra.

[5] In re Paramount Publix Corp. (Palmer v. Paramount Pictures) 85 F.(2d) 588 (C.C.A.); In re Paramount Publix Corp. (Boehm v. Paramount Pictures), 85 F.(2d) 592 (C.C.A.).

[6] In re Paramount Publix Corp. (Lesser v. Paramount Pictures), 85 F.(2d) 595 (C.C.A.); In re Paramount Publix Corp. (Zirn v. Paramount Pictures), 85 F.(2d) 593 (C.C.A.).

lowed fees for only one attorney, so in reorganization there should be no duplication or multiplication of attorneys at the expense of the fund, but only one counsel fee for each interest. If the parties choose to multiply counsel, the multiplication may not extend to compensation out of the funds. Whether there is one set of counsel or many, compensation should be measured by the services rendered to the estate and not by the number of attorneys. For throughout, in acting upon claims for compensation, it must be kept in mind that the estate which is sought to be charged with the payment is made up not of the debtor interest alone, nor of the creditor interest only, nor at all of those who merely make claims against it, but of all those who have a beneficial interest in it, and that the value to the estate of the claimed services gauged not liberally but reasonably, that is with due regard for a careful, prudent and economical administration, is the sole measure of their payment. Thus it is not only proper, but necessary, in making allowances, to take carefully into consideration the nature of the activities for which allowance is asked, and particularly whether, and the extent to which, they have inured to the benefit of the estate as distinguished from particular interests in the estate. Teasdale v. Sefton Nat. Fibre Can Co. (C.C.A.) 85 F.(2d) 379; In re A. Herz, Inc. (C.C.A.) 81 F.(2d) 511.

If, then, in the course of reorganization proceedings the only activities of particular groups have been not merely in their own interest alone, but obstructive of the general interest, these groups, whether representing debtor or creditor interests, should have no allowance from the estate made to them, no matter how large an interest in the estate the particular group may have. Teasdale v. Sefton Nat. Fibre Can Co. supra. On the other hand, if beneficial services have been rendered to the estate, and if they have been duly recognized by the court as services of a general nature, and not merely voluntary efforts to obtain compensation, compensation may be allowed on that account, fixed with regard to that benefit, though the person to whom the compensation is allowed and the group he represents may turn out to have only a small interest in the estate, and though the activities may have been primarily in the interest of a particular client. In re Consolidated Motor Parts (C.C.A.) 85 F.(2d) 579, 580.

Applying these principles to the facts of this case, it appears that the bondholders' side of the controversy has throughout the proceedings had a present and predominating interest in the estate, the debtor's side only an equity, and that heavily encumbered. The representatives of each side therefore, while obligated to act fairly and openly, had the right, and were under the duty, to conduct themselves in the reorganization proceedings so as to preserve and protect the interest they represented. Texas Hotel Securities Corp. v. Waco Development Co. (C.C.A.) 87 F. (2d) 395. If their activities resulted beneficially not to their claims alone, but to the claims of others as well, for that contribution they should have an allowance from the fund, looking to their clients for any balance due on account of particular services rendered them. If their activities were completely destructive of the general interests of the estate, and not because of, but despite them, the estate was benefited, the allowances should be greatly limited and reduced, if not altogether denied because of these adverse activities.

This principle applies with equal force to the bondholders and their counsel, the debtor and its counsel, and to the Dee Committee. As to the reorganization trustee and the attorneys for the trustee, since they represent none of the contesting parties, in order for their activities to be compensated from the fund, they must have been wholly impartial, and for the benefit of the estate alone. If rendered otherwise, no compensation should be allowed them from the estate.

### The Claim of the Trustee, Straus.

The trustee Straus makes claim in the dual capacity of trustee for the bondholders under the mortgage, and as reorganization trustee. If, as the court found, he was active in the matter of the National Hotel cash plan, and those activities were in the interest of the bondholders, and contrary to the interest of the estate as a whole, the court correctly denied him compensation as reorganization trustee. But as trustee for the bondholders he was in any event entitled under the mortgage contract, to an allowance out of the fund.

We have carefully examined the record for evidence of activities on the part of Straus hostile or inimical to the estate sufficient to disentitle him to an allowance from the funds. We have found none.

We think Straus' claim was improperly disallowed. The amount he prays for, $7,500, does not seem excessive. We think however, under all the circumstances, he will be reasonably though not liberally, compensated by an allowance of $5,000, and we direct that he be allowed that sum.

### The Claim of Baker.

While it does appear that this claimant was throughout an active contender for an interest and that he did receive in the reorganization plan, very large and substantial recognition, we think it was within the discretion of the District Judge to make him an additional allowance as trustee, and we cannot say that discretion has been abused. The allowance to Baker is approved.

### The Claim of the Dee Committee.

We cannot agree with appellants that the activities of this committee were without benefit to the estate. Certainly a great amount of work was done by it. In fact, Mr. Dee, of this committee, bore the burden of negotiating for the debtor interest. Certainly the final outturn of these negotiations while beneficial to the stockholders they represented, was beneficial to the bondholders too.

We think, then, that no abuse of discretion in allowing this compensation is shown, either in the fact or in the amount of the allowance. The attitude of the committee was contentious, its position adversary throughout; but this was because the attitude of appellants from the start made it necessary for them to entrench themselves against being overwhelmed, and they seemed to know that a good attack is the best defense. If the result of their activities had been to impose a loss upon the bondholders, to whom by virtue of their great holdings the estate largely belonged, they should not have been granted an allowance from the funds. But the contrary is true. This allowance is approved.

### The Claim of Callaway & Reed.

We find no warrant in the evidence or in law for charging this claim upon the funds. Valuable as their services undoubtedly were to Mr. Baker, their personal client, they were attorneys for him personally and for the Hotel Company. Their activities, and they were great and important to their clients, were for adversary litigants. In principle, they must look to those clients for their fees. Representing Baker personally at all times, and successful in securing for him a substantial interest in the property, never at any time appointed attorneys for him as trustee, they should look to Mr. Baker and the Hotel Company for their compensation. The amount allowed, as an amount based upon the value of their services to their clients, is not an unreasonable one; indeed, we think a larger fee could have been allowed out of their clients' interest. We disapprove the allowance not because the fee is excessive, nor because the services were not worth the amount allowed, but because in law they cannot be considered as rendered to and compensable by the estate, in the reorganization proceeding. Especially is this so as to services to the Hotel Company, which was fully represented in the reorganization proceedings by attorneys who were allowed compensation. Cf. In re New York Investors, Inc. (C.C. A.) 79 F.(2d) 182, and authorities supra.

### The Claim of Sylvan Lang et al.

Finally, as to the attorney's fee for the debtor, we think that if this were a controversy between these counsel and the debtor interest over the fee it should pay them out of its realized equity, and if, as it is claimed, and the District Judge found, the plan if it works out will result in saving the debtor interest a million dollars, and if, as the court below found, the putting through of the plan and its acceptance was largely due to their activities, the charge of that amount against the debtor interest out of its equity when realized, would not be unreasonable, but entirely reasonable. But that is not the question here. The question is not what the debtor interest should pay counsel out of its own funds for highly valuable services rendered to a debtor so heavily embarrassed that they must look contingently to its equity for their pay. The question here is what may be legally allowed out of a fund in a reorganization proceeding for legal services to the debtor, in connection with the proceedings and the plan. In re Allied Owners Corporation (C.C.A.) 79 F. (2d) 187. These legal services consisted of bringing the reorganization proceedings, obtaining postponements from time to time for bringing in a plan, consulting with interested parties in regard to it, bringing in one plan, and then obtaining in the same court where the proceedings were pending an injunction against the action of the bondholders' committee, who were seeking to put through a plan which would have wiped the debtor's equity out; thereafter

in co-operation with other interests which have been allowed compensation in connection with the plan they brought forward and obtained approval of a plan finally accepted by all.

In connection with all of these proceedings counsel for the bondholders, whose $3,000,000 interest in the estate represented, according to the debtor's estimate, three-fourths of its value, according to the bondholders more than its value, were allowed for their services to the bondholders' committee, $17,500. The attorneys for the mortgage trustee who brought the foreclosure proceedings and' have represented him throughout all the proceedings, were allowed $12,500, a total of $30,000 for legal services rendered to the interest representing at least three-fourths in value of the estate. According to the same estimate of value, the debtor's interest amounts to one million, or one-fourth of the estate.

Under all the circumstances, then, taking into consideration the favorable plan which was finally secured, we think that though the debtor's interest is only one fourth of that of the bondholders, an allowance out of the funds for legal services rendered the debtor interest the same in amount as that allowed the bondholder interest, though liberal, would not be unreasonable.

We cannot find in anything the bondholders did, or in the injunction proceedings debtor's attorneys brought in the reorganization court in connection with the cash plan, any sufficient support for the amount of the allowance made to debtor's attorneys out of the general funds. We are of the opinion that a reasonable allowance to them from the estate for all their services to it including this would be $30,000, without prejudice to their right to look to and receive additional payment from their client out of its equity for the valuable services they rendered, and which inured directly to its benefit.

The orders appealed from are affirmed as to the Dee and Baker allowances. They are reversed as to the disallowance of Straus's claim and as to the allowances to Callaway & Reed and Sylvan Lang et al., with directions to allow Straus $5,000, and Sylvan Lang et al. $30,000, and to require the immediate repayment by counsel into court of the amounts disallowed.

Affirmed in part, and reversed and remanded in part, with directions.

