**STRAUS et al. v. BAKER CO. et al.**

No. 8152.

Circuit Court of Appeals, Fifth Circuit.

April 6, 1937.

For former opinion, see 87 F.(2d) 401.

Allen Wight and Robert Allan Ritchie, both of Dallas, Tex., and Ulysses S. Schwartz and Claude A. Roth, both of Chicago, Ill., for appellants.

Alfred McKnight, of Fort Worth, Tex., Carl B. Callaway, of Dallas, Tex., and Sylvan Lang, of San Antonio, Tex., for appellees.

Before SIBLEY and HUTCHESON, Circuit Judges, and STRUM, District Judge.

PER CURIAM.

[1, 2] In their motion for rehearing, Callaway and Reed vigorously attack our conclusion that no allowance should have been made them for services as attorneys for Baker Hotel Company and for Fenton J. Baker as operating cotrustee. A careful re-examination of the record confirms and strengthens us in our former conclusion. As to the Baker Company, and for services rendered to it before the reorganization proceeding, Callaway and Reed stood as any others of its creditors. If they had a claim against it, they should have proven it and taken in regard to it under the reorganization plan as its other creditors did. As to their claim for services to the company in the reorganization proceeding, not they, but Messrs. Lang et al., represented the company. Callaway and Reed represented, not the company, but Fenton J. Baker individually. Lang et al., in their statement in support of their claim, filed September 11, 1935, for a fee allowance for services as counsel for the Baker Company debtor, make this very plain. They say, and no one disputes it, indeed the whole record confirms it:

"The conflicting interests and claims of the unsecured creditors of the Debtor, the holders of the balance of the preferred stock of the Debtor, the holders of liens

against certain non-hotel property, Fenton J. Baker, Dallas Rupe and Son, certain individual bondholders, as Mr. Hoblitzclle, had to be considered and ironed out before a plan of reorganization could be effected. All of this combined to make the task of securing a satisfactory and fair plan of reorganization an extremely difficult one.

"In August of 1934, petitioners initiated proceedings with Mr. Fenton J. Baker and his attorney, Mr. Carl Callaway, and agreed upon the general outline of a plan of reorganization which would be satisfactory to Mr. Baker and to their client, which would insure the continued operation of the hotel under his management, and which would afford fair and just protection and security to the other interested parties."

They say, further: "Innumerable matters and questions relative to the operation of The Baker Company consumed a great amount of time of your Petitioners. Questions were presented whether or not improvements should be made; correspondence was had with H. W. Dolf, Auditor of Baker Hotel; with Lawrence Stern and Co.; with Ritchie; with Horace Towner; with the Corporation Trust Company; with Ernst and Ernst; with Frank Scofield, Collector of Internal Revenue; with Mr. Robert H. Jackson, Assistant General Counsel for the Bureau of Internal Revenue; and others, over a period of several months relative to questions on income tax liens against the property of the Baker Company, and with regard to franchise taxes and capital stock taxes of The Baker Company."

It is true that Callaway and Reed continued during the reorganization proceeding to draw $100 a month, as they had theretofore done, but this money was paid them, not by the company, but by the permanent trustee, under a generally understood arrangement in which Callaway and Reed, though paid by the trustee, were understood not to be personal counsel for him. In the injunction proceeding brought by the debtor in connection with the National Hotels Cash Plan, the following appears, at page 802 et seq. of the record:

"McKnight and Lang appeared in behalf of the debtor, and Callaway in behalf of Baker. Mr. Callaway testified: 'I state that I am attorney for Mr. Fenton Baker. * * * Second, the statement which I shall make is not to be interpreted as being either authorized by or made for the benefit of Debtor; it is made solely up-

on behalf of Mr. Baker and his counsel. * * * During all of these negotiations I had been faced with four difficulties. * * * First, that in representing Mr. Baker's interests, I could not find out whom I was dealing with and who had authority to talk. Mr. Ritchie had originally represented the Trustee under the old ·indenture of The Baker Company, as its attorney. When that Trustee was made the permanent Trustee under those reorganization proceedings, Mr. Ritchie changes, * * * and he began to represent that Trustee.'

"Mr. Ritchie: 'I wish to interrupt to suggest that I have never stated to anyone that I represented the permanent Trustee. And, as a matter of fact, Mr. Carl B. Calloway is receiving a salary as attorney for the permanent Trustee.'

"Mr. Calloway: 'It could not possibly be so, if the Court please. The salary which I am receiving is as attorney for The Baker Hotel in Dallas. * * * I have never been appointed as attorney for the permanent Trustee, and there is no court order which has authorized me to. Mr. Ritchie has conducted all of the negotiations for the permanent Trustee. * * * We had assumed that the attorney for the permanent Trustee would naturally be an impartial man, because a Trustee under the spirit of section 77B is supposed to be impartial. So I was faced with the proposition that the gentleman * * * whom I considered as the attorney for the permanent Trustee, was antagonistic to everyone in the reorganization proceeding except the bondholders.' "

In the light of this testimony, there can be no doubt that Callaway and Reed were not representing the trustees in a general sense, nor the company. They were personal attorneys for Fenton J. Baker and, in addition, they had been authorized by the permanent trustee to continue doing routine service for the company, and to receive the $100 per month they had been receiving. In their brief in support of their appointment, on April 9, 1935, as attorneys for Baker, permanent trustee, they say that there was nothing to prevent their appointment as such, for they did not represent the debtor, any creditor, or any stockholder.

As to their claim for services for representing Fenton J. Baker as cotrustee, while there is in the record their undisputed statement that they were authorized by the court to go with Baker to St. Louis,

and the record shows that Baker was allowed their expenses, paid by him on that occasion, the record, taken as a whole, makes it entirely clear that their substantial representation was of Baker, personally, and not as cotrustee, and that there is no basis in the record for allowing them compensation as attorneys for him as cotrustee.

Their motion must nevertheless be granted in part and the reversal order corrected, for we did overlook the legal services they performed under appointment for Baker as sole trustee from April 9, 1935, when their claim was filed, and the fact that, though attorneys for Baker personally, and obligated to look to him for the greater part of their compensation, they did, in the course of representing him, a "party in interest" under subsection (c), subd. 9, § 207, 11 U.S.C.A., Bankr. Act, § 77B, subsec. (c), subd. 9, perform services of value to the whole estate for which value the estate should compensate them.

We overlooked the former because their brief centered entirely upon their activities and services before the plan was tentatively approved in April and a permanent trustee appointed; no substantial services rendered the permanent trustee were pointed out. We overlooked the latter because the claim, the statement in support of it, and the brief were all directed to obtaining an allowance for services rendered in their capacity as attorneys for the debtor company and for Baker officially as cotrustee. We have concluded that, though the claim took that form, its substance really lies in the fact that services beneficial to the estate as a whole were rendered, and that the precise employment under and in connection with which they were rendered is not material. Addressing ourselves to these two grounds of compensation, we find, as to legal services rendered the permanent trustee, little basis for a substantial allowance. While there was a short period before the new company was organized, and took over, with Callaway and Reed as its attorneys on August 1, 1935, during which the details of approval of the reorganization plan were being carried out, everything that was done from April 9th on was done in full cooperation. All of the counsel for all of the parties worked harmoniously with regard to it. Callaway and Reed, as attorneys for Mr. Baker and for the new company being organized, were vitally interested in the reorganization plan, and if they had not been appointed attorneys for Baker as trustee, they would, as his personal attorneys and the attorneys for the new company, have been expected and would have done the greater part of all that they did do. Their services to the estate, however, in connection with the reorganization proceeding and plan, stand differently. They were valuable and substantial, and, though they did inure directly and greatly to the benefit of their personal client, Mr. Baker, they also inured to the estate as a whole. We are of the opinion, therefore, that for the services rendered to the estate in connection with the proceedings and plan, and for the services rendered the permanent trustee, a liberal though not unreasonable allowance to Callaway and Reed for their services, to be paid from the estate, is $6,000. The order of reversal is therefore amended so as to provide that Callaway and Reed should be allowed $6,000 and should immediately repay into the court the balance of the amount originally allowed them.

All motions for rehearing are overruled, and, except as herein modified, the former order of reversal shall stand.