**In re TRANS–STATE OIL CO.**[*]

No. 1890.

District Court, S. D. Texas, Houston Division.

July 20, 1938.

Zweifel, Tuohy & Crager, of Fort Worth, Tex., and Cole, Patterson & Cole, of Houston, Tex., for applicants.

[*]Order reversed Zweifel, Tuohy & Crager v. Trans-State Oil Co., 99 F.2d 650.

KENNERLY, District Judge.

This is a proceeding under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, originally filed July 31, 1936, in the United States Court for the Northern District of Texas, before Judge Wilson. It was transferred by Judge Wilson to this District August 31, 1936, and filed here September 3, 1936. Soon thereafter, the writer (Kennerly) found that he was disqualified in the case, and Judge Wilson continued in charge.

About September, 1937, it was called to the writer's attention that in the administration of the Estate, his disqualification had been removed, and thereupon he (Judge Wilson consenting) took charge of the case. A meeting of Creditors was called, held October 22, 1937, and a Trustee appointed. During the absence of the writer on account of illness, a Plan of Reorganization was approved by Circuit Judge Hutcheson.

This is a hearing on the application of Zweifel, Tuohy & Crager and Cole, Patterson & Cole (for convenience called Applicants), for an allowance of compensation and expenses as attorneys for the Debtor. Their application is for an allowance of compensation here of $4,500, making their total compensation $14,500 (in addition to $500 which it appears has already been paid them) as attorneys for the Debtor for a period beginning a short time before the filing of Debtor's Petition and continuing throughout this entire proceeding, the last named firm, however, having come into the case at or about the time it was transferred to this District. They also ask for $852.11 expenses, of which $100 has been paid.

In their application, they say in part:

"Applicants further state and allege that a reasonable fee for the services performed would be in the sum of $14,500.00. The Plan of Reorganization provides that attorneys' fees for the Debtor and for other attorneys for services rendered during the reorganization proceedings shall be paid up to $5,000.00 as a preferred claim before Class A, B and C Certificates are paid. That any other amount allowed as attorneys' fees for services rendered in this proceeding shall be paid after Class A, B and C Certificates are paid in full.

"Your applicants further state that a reasonable fee to be paid as provided by the Plan, before the Certificates A, B and C are paid, would be in the sum of $4,500.00. That the Trans-State Oil Company has executed a contract with your applicants herein whereby the Debtor Corporation agrees to pay $10,000.00 as attorneys' fees after the Certificates A, B and C are paid, in addition to what the Court allows to be paid as a fee before the certificates are retired, which sum does not necessarily have to be considered by this Court, as it is not being paid out of the general estate belonging to the creditors, but that this counsel wishes to advise the Court of the full amount to be received; ultimately for all the work performed in this proceeding. * * *

"Your applicants further represent to the Court and make affidavit that no agreement has been made directly or indirectly and that no understanding exists for a division of the fees between the applicants, trustee, creditors or the attorneys for any of them, or the Bankrupt.

"Your applicants further represent to the Court he has not been promised any attorneys' fees, and no agreement has been made relative to attorneys' fees to be paid out of the Estate.

"Wherefore, your applicants pray that upon final hearing they be allowed a fee of $4,500.00 plus expenses in the sum of $752.11 to be paid forthwith after the expenses of the trusteeship are paid, and to be paid proportionately according to the amount allowed to any other attorneys; and that the balance of $10,000.00 be paid after Class A, B and C Certificates are fully paid and retired."

The facts are substantially as follows:

(a) This is an Estate with assets of approximately $300,000, with an income of approximately $4,500 per month from oil wells, and with a cost of operation of from $1,200 to $1,500 per month. It is reasonable to expect that under the approved Plan of Reorganization, the Creditors, whose claims amount to approximately $136,000, will in time be paid.

(b) Applicants have performed services substantially as set forth in their application (filed June 1, 1938), which services I find to be of the reasonable value of between $3,000 and $5,000. I do not find such services to be of the value of $14,500, and the payment of $14,500, or any sum in excess of $5,000, to Applicants either by this Estate or by the Debtor, or by both, would not be reasonable.

(c) The following Agreement between Debtor and Applicants, dated March 29, 1938, was offered in evidence by Applicants:

"March 29th, 1938.

"This is a memorandum of an agreement between Trans-State Oil Company and its

attorneys, Zweifel, Gregor and Tuohy, and their associates, Cole, Patterson & Cole, that for and in consideration of the work done in reorganizing said company the Trans-State Oil Company has agreed to compensate said above mentioned attorneys, besides the money allowed by the Court which will be paid before the creditors are paid, an additional sum of $10,000.00, to be paid after the various classes of creditors are paid as set out in the plan.

"Trans-State Oil Company,
"(sgd) Claude Kavanaugh
"President."

(d) Applicants have incurred expenses in this case amounting to $852.11, of which $100 has been paid to them. Such expenses are reasonable and appear to have been necessary.

1. In cases under Section 77B of the Bankruptcy Act, allowances of compensation and expenses may be made to the Debtor's Attorneys (subdivision 9 of subsection (c) of section 207, title 11, U.S.C.A.). In this Circuit, the nature and character of such allowances and the circumstances under which they may be made are made plain by the Opinion in Straus v. Baker Co., 5 Cir., 87 F.2d 401, and 5 Cir., 89 F.2d 322, and the cases there cited and reviewed. The services rendered by Applicants are well within the rule laid down in that case and would support an allowance to Applicants of $4,500, as prayed for, if the Court was not required to consider other matters in connection therewith.

2. Since the Opinion in Straus v. Baker Co., supra, Congress has passed the so-called Borah Act (section 572a, title 28, U.S.C.A.), the pertinent part of which is as follows (italics mine) :—

"§ 572a. Fees in receivership, bankruptcy, or reorganization proceedings—Agreement fixing fee unlawful.

"(a) It shall be unlawful for any party in interest, or any attorney for any party in interest, in any receivership, bankruptcy, or reorganization proceeding, in or under the supervision of any court of the United States, to enter into any agreement, written or oral, express or implied, with any other party in interest, or any attorney of any other party in interest, in such proceeding for the purpose of fixing the amount of the fees or other compensation to be paid to any party in interest or any attorney of any party in interest in such proceeding, for services rendered in connection therewith *when such fees or other compensation are to be paid from the assets of the estate in receivership, bankruptcy or reorganization.* As used in this section, the term 'party in interest' includes any debtor, creditor, receiver, or trustee and any representative of any of them."

The first questions are what is meant by the "assets of the estate" as used in such Act, and whether the $10,000 compensation agreed upon by Debtor and Applicants is payable under their Agreement from the "assets of the estate" within the meaning of such Act.

Reference to the Congressional Record (Senate Record, Pg. 10883) shows that the Bill which became this Act did not contain the words *"when such fees or other compensation are to be paid from the assets of the estate in receivership, bankruptcy or reorganization"* when it came from the Judiciary Committee of the Senate, but that such wording was added by amendment on the floor of the Senate.[1] It appears that

---

[1] The pertinent portion of the Senate proceedings respecting the Bill are as follows:—

"The Senate proceeded to consider the bill (S. 2849) to prohibit certain agreements fixing compensation fees in receiverships, bankruptcy, or reorganization proceedings, which was read as follows:

"Be it enacted, etc., That (a) it shall be unlawful for any party in interest, or any attorney for any party in interest, in any receivership, bankruptcy, or reorganization proceeding, in or under the supervision of any court of the United States, to enter into any agreement, written or oral, express or implied, with any other party in interest, or any attorney of any other party in interest, in such proceeding for the purpose of fixing the amount

of the fees or other compensation to be paid to any party in interest or any attorney of any party in interest in such proceeding, for services rendered in connection therewith. As used in this section, the term 'party in interest' includes any debtor, creditor, receiver, or trustee and any representative of any of them.

"(b) It shall be unlawful for the judge of any court of the United States to approve the payment of any fees or compensation the amount of which is fixed as the result of any act declared to be unlawful by subsection (a) of this section.

"(c) Any person who commits any act declared by this section to be unlawful shall, upon conviction, be fined not more

such amendment was made so as to permit a Debtor to agree to compensate his attorney in such amount as he sees fit, provided that such compensation is not to be paid from the assets of the estate.

While in Section 77B cases, such an agreement may be made during the time the estate is in the custody of the Court, it is clear that under the Act the compensation agreed to must be made payable after the estate has been fully administered, i. e., after the Plan of Reorganization has been fully carried out as approved, after the jurisdiction of the Court over the estate has been ended, and after the case has been, by Order of the Court, finally closed.

The evidence shows the Agreement here to be of that character. It is that Debtor will, when the estate is in that manner finally closed, pay Applicants compensation in the sum of $10,000. There is no contention to the contrary. Applicants are attorneys of high standing who would be far from making an agreement in violation of the Act. They have, properly and as should be done in all cases, reported the Agreement and all the facts to the Court. I entertain no doubt as to the correctness of their position on that point.

While it is true that such Agreement does not purport to have been approved by the Board of Directors of Debtor, and while it is not clear that the President of Debtor was authorized to sign it, there is no one here disputing its binding effect on the Debtor. This Court has no jurisdiction of such Agreement, expresses no opinion with respect thereto, and neither approves nor

---

than $10,000 or imprisoned not more than 5 years, or both.

"Mr. McKellar. Mr. President, apparently there is no report accompanying the bill. Will the Senator from Idaho explain it?

"Mr. Borah. Mr. President, it is rather an important measure, but I think I can explain it by making a short statement. In the first place, it has been reported by the Judiciary Committee. The bill simply provides that any agreement between attorneys in bankruptcy cases and reorganization cases as to fees shall be illegal, also as to compensation of receivers. It prohibits any agreement between parties in interest fixing compensation of receivers or fixing the compensation of attorneys. We have found out through investigation that the heart of the misdoings with reference to receivership cases was that attorneys get together and agree upon large fees, agree upon a receiver, agree upon receivers' fees, agree upon the compensation of all parties concerned, and the result is that they simply divide up the carcass and there is nothing left for creditors or anybody else.

"Mr. McKellar. In view of the many scandals that have arisen in regard to receivership fees and even attorneys' fees in receivership cases, I am heartily in favor of the Senator's bill, and I hope not only the Senate will pass it but that the other House will pass it and that it will become a law.

"Mr. Borah. I thank the Senator.

"I desire to offer an amendment for clarification more than anything else. I send it to the desk and ask that it may be read.

"The President pro tempore. The amendment will be stated.

"The amendment was on page 2, line 2, after the word 'therewith' to insert:

"When such fees or other compensation are to be paid from the assets of the estate in receivership, bankruptcy, or reorganization.

"So as to make the section read:

"That (a) it shall be unlawful for any party in interest, or any attorney for any party in interest, in any receivership, bankruptcy, or reorganization proceeding, in or under the supervision of any court of the United States, to enter into any agreement, written or oral, express or implied, with any other party in interest, or any attorney of any other party in interest, in such proceeding for the purpose of fixing the amount of the fees or other compensation to be paid to any party in interest or any attorney of any party in interest in such proceeding, for services rendered in connection therewith when such fees or other compensation are to be paid from the assets of the estate in receivership, bankruptcy, or reorganization. As used in this section, the term 'party in interest' includes any debtor, creditor, receiver, or trustee and any representative of any of them.

"Mr. Borah. It was thought the bill as written would prevent a client from agreeing with his own attorney as to how much compensation he should pay his attorney, so we are proposing to limit the agreement to such compensations or attorneys' fees as are to come out of the estate or the reorganization fund, and so forth.

"The President pro tempore. The question is on agreeing to the amendment offered by the Senator from Idaho.

"The amendment was agreed to."

disapproves it or the compensation agreed to be paid thereunder, but assumes, for the purposes of this discussion and in this case, that it is binding on Debtor as Applicants claim.

■ 3. There is presented, therefore, this simple question. Applicants' entire services in this case have been found to be of the value of not exceeding $5,000. Debtor has agreed to pay Applicants, after the estate is closed, $10,000, or much more than the value of such services as so found. What then is the duty of the Court? Clearly it is to decline to make an allowance to Applicants payable from the assets of the estate, but leaving them free to pursue the matter against Debtor after this estate has been closed.

Applicants are, however, allowed the balance of their expenses amounting to $752.11.

Let an Order be drawn and presented in accordance with these views.