## WARREN et al. v. PALMER et al.
### No. 94.

Circuit Court of Appeals, Second Circuit.

Dec. 11, 1942.

---

See, also, 2 Cir., 130 F.2d 887.

Before L. HAND, CLARK, and FRANK, Circuit Judges.

John Noble, Jr., of Boston, Mass., for appellants.

Hermon J. Wells, of New Haven, Conn. (J. H. Gardner, Jr., of New Haven, Conn., on the brief), for appellees.

CLARK, Circuit Judge.

Appellants, trustees in reorganization of the Boston and Providence Railroad Corporation, have appealed from the refusal of the district court to grant their petition for an allowance from the estate of the New York, New Haven and Hartford Railroad Company, also in reorganization, for certain expenses, including attorneys' fees, incurred by them in connection with the New Haven proceedings. These expenses arose out of petitioners' attempt to establish a claim for damages for breach of the long-term lease of the main line from Boston to Providence by the Boston and Providence to the Old Colony Railroad Company and the sublease from the Old Colony to the New Haven—matters often before this court—and concern not merely (1) the attempted proof of that claim, but also (2) opposition to the claim of respondents, the New Haven trustees, for losses incurred in respondents' operation of the leased properties for the account of the lessor,[1] and (3) participation in the various proceedings for the development of

---

[1] Respondents were required to operate the Boston and Providence road for its benefit, notwithstanding their rejection of the lease, as provided in the Bankruptcy Act, § 77, sub. c(6). See Palmer v. Webster & Atlas Nat. Bank of Boston, 312 U.S. 156, 61 S.Ct. 542, 85 L.Ed. 642.

a plan of reorganization for the New Haven. The issue turns upon the interpretation of the Bankruptcy Act, § 77, sub. c (12), 11 U.S.C.A. § 205, sub. c (12), which provides that "within such maximum limits as are fixed by the [Interstate Commerce] Commission, the judge may make an allowance, to be paid out of the debtor's estate, for the actual and reasonable expenses (including reasonable attorney's fees) incurred in connection with the proceedings and plan by parties in interest." The district court held, as a matter of discretion and because petitioners' activities were not beneficial to the New Haven estate, that no reimbursement should be granted petitioners. We upheld appeal as of right in Warren v. Palmer, 2 Cir., 130 F.2d 887.

When the New Haven proceedings were initiated in 1935 in the District Court for the District of Connecticut, that court authorized the New Haven trustees to operate the leased properties, subject to a stop-loss provision that their operation should be deemed to have been for the account of their lessor in the event of a subsequent rejection of the sublease. In 1936, the trustees rejected the Old Colony lease, and the Old Colony was immediately admitted as a secondary debtor for reorganization in the New Haven proceeding, with the New Haven trustees as also its trustees. In 1938, the respondent trustees rejected the Boston and Providence lease to the Old Colony, whereupon the Boston and Providence went into reorganization in the District Court for the District of Massachusetts, with petitioners as its trustees. Petitioners promptly set about establishing a claim against the New Haven estate for the rejection of their lease and also, as part of the pending reorganization, intervened in a proceeding whereby the trustees of the New Haven-Old Colony estates sought to charge the Boston and Providence properties with a lien for the losses sustained in their operation of these properties prior to the rejection of the lease. Petitioners doggedly opposed the assertion of this lien, both on the merits and on jurisdictional grounds, twice appealing to this court and once to the Supreme Court of the United States. Palmer v. Palmer, 2 Cir., 104 F.2d 161, certiorari denied 308 U.S. 590, 60 S.Ct. 120, 84 L.Ed. 494; Palmer v. Warren, 2 Cir., 108 F.2d 164, affirmed as to jurisdiction 310 U.S. 132, 60 S.Ct. 865, 84 L.Ed. 1118. Neither claim has as yet been finally settled. In 1941, the parties agreed to a temporary cessation of hostilities and, by stipulation, fixed the lien claim at $7,000,000, and the damages claim at $10,000,000—for the sole purpose of evaluating and voting these claims in connection with pending plans for reorganization of the New Haven.

At the time that the stipulation was negotiated, the ICC had approved a plan whereby the New Haven was to acquire the Boston and Providence properties, which in fact had constituted an integral part of the New Haven system for more than forty-five years. The Boston and Providence trustees prompted the Commission to include in this plan a number of concessions to their interests which but for their efforts might have been omitted, such, for example, as a requirement that the reorganized New Haven assume most of the claims against the Boston and Providence which should be allowed up to the date of the confirmation of the plan. The plan, however, failed to secure the approval of the court, which referred it back to the Commission in December, 1941, and no plan has as yet been adopted. On December 20, 1940, the district court ordered the filing of all claims to allowances for expenses incident to the reorganization of the New Haven. Within the time allowed, petitioners filed the claim at issue, which the court referred to the ICC pursuant to § 77, sub. c (12), supra. The ICC fixed maxima of (1) $35,661.59 for expenses exclusive of attorneys' fees and expenses (instead of the $67,751.50 asked) and (2) $35,000 for attorneys' fees (instead of the $50,000 asked), plus $1,359.16 for attorneys' expenses as requested. Except as to certain matters— of limited importance on the present issue— bearing upon the development of a reorganization plan for the New Haven, we do not find that the district court abused its discretion in the premises. See In re Paramount Publix Corp., 2 Cir., 85 F.2d 588, 590, certiorari denied Palmer v. Paramount Pictures, 300 U.S. 655, 57 S.Ct. 432, 81 L. Ed. 865; In re A. Herz, Inc., 7 Cir., 81 F.2d 511.

█ Although judicial interpretation of § 77, sub. c (12), is conspicuously absent, it is so akin, both in its terms and in its context, to a provision applicable—before the recent amendments—in reorganization

proceedings, § 77B, sub. c (9),[2] that cases decided under the latter statute may be adopted as ruling analogies. There is no substance to appellants' argument that the former is of a broader scope because it authorizes the court to make allowances for "reasonable" expenses, whereas the latter sanctions an allowance only for "necessary" expenses. Most of the decisions under § 77B, sub. c. (9), were concerned with compensation of attorneys, as to which the express statutory condition to an allowance was that the compensation be "reasonable."[3] And in practice reasonableness was the test for all allowances under that statute. See In re Middle West Utilities Co., D.C.N.D.Ill., 17 F.Supp. 359, 372. See, also, § 77B, sub. f (5), 11 U.S.C.A. § 207, sub. f (5). The truth of the matter is that the statute here involved really provides a more limited—not a broader—basis than § 77B, sub. c (9), for the assertion of claims to allowances by parties in interest, for it authorizes no compensation for services rendered, but only reimbursement for actual and reasonable expenses.

The criterion of reasonableness under § 77B, sub. c (9), was *benefit* to the estate under administration or contribution in some substantial manner to the "working out" of a plan of reorganization. See In re Nine North Church St., 2 Cir., 89 F.2d 13, 14, certiorari denied Glass & Lynch v. Nine North Church St., 302 U.S. 709, 58 S.Ct. 29, 82 L.Ed. 547; Straus v. Baker Co., 5 Cir., 87 F.2d 401, 407, modified 89 F.2d 322; R. F. C. v. Herring, 9 Cir., 110 F.2d 320, 322; In re Memphis Street R. Co., 6 Cir., 86 F.2d 891, 894; Teasdale v. Sefton Nat. Fibre Can Co., 8 Cir., 85 F.2d 379, 382, 107 A.L.R. 531; In re United Cigar Stores Co. of America, D.C.S.D.N.Y., 21 F.Supp. 869, 875, 879. Differently stated, the services or expenses for which compensation or reimbursement was sought must have been of benefit to all the sets of interests in the estate. Activities which only increased the share of one class of creditors at the expense of other creditors have not been considered to benefit the estate or to contribute to the plan. See Straus v. Baker Co., supra, 87 F.2d at page 407; Teasdale v. Sefton Nat. Fibre Can Co., supra, 85 F.2d at page 383, 107 A.L.R. 531; In re New York Investors, 2 Cir., 79 F.2d 182, 189, certiorari denied Endelman v. R. F. C., 296 U.S. 649, 56 S.Ct. 308, 80 L.Ed. 462; cf. In re A. Herz, Inc., supra. See Medill, Fees and Expenses in a Corporate Reorganization under Section 77B, 34 Mich.L.Rev. 331, 347. Recoupment of the expenses so incurred by the representatives of the class has sometimes been allowed from the increased share made available to the class, under the general equitable principle applied in equity receiverships that those who enjoy benefits should share in the burdens incidental thereto. See Clark v. Goldman, 2 Cir., 124 F.2d 491, 493, supplemented 127 F.2d 852; Nolte v. Hudson Nav. Co., 2 Cir., 47 F.2d 166, 167. It may be noted now, however, that this principle cannot aid the petitioners, for they represent an individual, and not a class, interest, and they seek recovery from the general estate.

We look, therefore, to see whether any of the expenses incurred by the petitioners benefited the debtor's estate or assisted the preparation, negotiation, or putting through of a plan for its reorganization. Petitioners claim that their litigation of the damage and lien claims was a prerequisite to the formulation of a workable plan of reorganization. They argue that before these claims were determined, a fair plan could not be effectuated. Under this reasoning, however, the debtor's estate would be subjected to the payment of expenses incurred by every adverse party seeking to forward his own interest against the estate. Parties would be encouraged to fight tooth and nail to their last unsubstantial contention, and the rehabilitation of the debtor contemplated by § 77 would be hampered and delayed. Petitioners' activities here might have contributed indirectly to the proceeding for reorganizing

---

[2] The judge "may allow a reasonable compensation for the services rendered and reimbursement for the actual and necessary expenses incurred in connection with the proceeding and the plan by officers, parties in interest, depositaries, reorganization managers and committees or other representatives of creditors or stockholders, and the attorneys or agents of any of the foregoing and of the debtor, but appeals from orders fixing such allowances may be taken to the Circuit Court of Appeals independently of other appeals in the proceeding and shall be heard summarily." Bankruptcy Act, § 77B, sub. c(9), 11 U.S.C.A. § 207, sub. c(9).

[3] See statute, note 2, supra.

the debtor by eliminating disputed claims and establishing definite debits and credits which could be subjected to compromise in the working out of a plan. But remote assistance to the proceeding and to the plan for reorganization is not a sufficient reason for the reorganization court to order a reimbursement of parties in interest for expenses thereby incurred. See In re A. Herz, Inc., supra, 81 F.2d at page 513. Efforts directed toward promoting an agreement upon the relative participation of established debts in the general estate of the debtor should be recompensed from the general estate, but a particular creditor has no right to an allowance for expenses incurred in establishing for himself, or defending himself against, a particular claim. As Hincks, J., pointed out below, the pending reorganization of a party in default under a contract is surely no reason to change the general rule that the party injured bears the burden of establishing damages. Compare § 77, sub. b, 11 U.S. C.A. § 205, sub. b, to the effect that damages resulting from the rejection of a contract or lease shall be determined "in accordance with principles obtaining in equity proceedings." A valid plan may be proposed and adopted whether or not disputed claims on file have been allowed. § 77, sub. f. And in fact a plan was approved by the Interstate Commerce Commission before the claims based on the rejected lease were temporarily settled by stipulation. Accordingly we affirm the denial of an allowance for expenses incurred in the litigation of these claims.

■ Petitioners' claim for reimbursement of expenses incurred by participation in the plans for reorganization of the debtor requires, however, further analysis. The claim is limited to a period ending December, 1940, and petitioners have stated in their brief that they seek no reimbursement for expenses directly incurred in connection with the stipulation which was negotiated in the spring of 1941. Petitioners urge, however, that their litigation of the damage and lien claims led up to and made possible the stipulation.

We think it likely that the compromise effected by the stipulation did contribute to the "working out" of a plan. See In re Middle West Utilities Co., supra, 17 F. Supp. at page 375. And, although the record is not clear, possibly some of petitioners' activities in connection with the

litigation did help to make the stipulation possible. Thus, portions of the accounting upon the lien claim may have operated to this end; but clearly not all of petitioners' activities in that connection can be brought under this head. Since the matter is not made clear on this record—indeed, it was not even considered by the Interstate Commerce Commission (the hearing having been held before the stipulation was executed)—it should be left open for further consideration by the court, and if the court desires, by the Commission. An allowance now is not foreclosed, cf. In re Chicago, M., St. P. & P. R. Co., 7 Cir., 121 F.2d 371, certiorari denied Abrams v. Scandrett, 314 U.S. 679, 62 S.Ct. 180, 86 L.Ed. 544, and should not be denied because the New Haven was harassed and undoubtedly its estate lessened by petitioners' unyielding attitude in the damage and lien claims. Sec. 77, sub. c (12), does not purport to penalize parties in interest for holding out for a larger share of the estate. With no apparent attempt at retribution it grants reimbursement for expenses whenever any party performs any act of service in the working out of a plan. Since, however, the actual expense so far attributable to this activity appears to be not only small, but probably more easily evaluated in the light of later activities of petitioners which may assist in the final adoption of a plan of reorganization, we think our mandate herein should provide only that the matter be not foreclosed, leaving the time of its further consideration to the court's discretion.

■ Petitioners also assert that they were required to keep in constant touch with the various plans proposed because of their interests and claim reimbursement for those activities. But this court has declared that "mere participation in the hearings * * * or offering advice, suggestions, or criticisms regarding the proposed plan, or on matters of procedure, does not give rise to any claim for compensation from the estate." In re Paramount Publix Corp., supra, 85 F.2d at page 591. See, also, Milbank, Tweed & Hope v. McCue, 4 Cir., 111 F.2d 100, 101. Nor should allowance be made because petitioners secured better terms of sale for the Boston and Providence properties by active intervention in the proceeding before the Commission upon the first plan for purchase of the properties by the New Haven. As we have already

noted, § 77, sub. c (12)', is not applicable to this situation, and the equity rule is of no aid to petitioners.

The order appealed from should, therefore, be modified to provide that petitioners are not foreclosed by it from an allowance only for expenses incurred in activities prior to December, 1940, which contributed to the compromise of the disputed claims for damages and for a lien, and that this issue may be determined now or hereafter, as the court may desire. As so modified, the order is affirmed.