### MANHATTAN CO. v. NEW YORK, N. H. & H. R. CO. et al.

#### No. 11, Docket 20923.

United States Court of Appeals
Second Circuit.
Dec. 23, 1948.

Clifton S. Thomson and Appleton, Rice & Perrin, all of New York City (John D. Kernan, Jr., of New York City, of counsel), for appellants.

J. H. Gardner, Jr., and H. J. Wells, both of New Haven, Conn., for appellees.

Before L. HAND, Chief Judge, and CHASE and FRANK, Circuit Judges.

L. HAND, Chief Judge.

The Manhattan Bank appeals from an order entered in the reorganization of the New Haven road, which disallowed its

claim for attorneys' fees and expenses, incurred in its successful effort to preserve its position as a secured creditor.[1] The original claim arose because the district court had enjoined the bank ex parte from selling shares of two other roads which had been pledged to it for a loan made to the New Haven. While the injunction was outstanding the shares lost all value, and the bank's position was that it should be treated as a secured creditor as of the time when the injunction issued. We finally allowed the original claim as an "administration expense" and as such the bank has collected it; the present claim for the fees and other expenses is of an amount which the Interstate Commerce Commission has passed as a proper maximum, and which the New Haven does not dispute. The judge disallowed it, however, as not legally valid, and the bank appeals. In passing upon the original claim we first accepted the bank's argument that it should be treated as a secured creditor as of the time of the injunction, for we thought that "fair and equitable treatment requires that the damage caused the banks should be made good to them." 147 F.2d at page 48. However, the trustees of the road asked us later to modify this ruling in the interest of "expedition," and so it came about that finally, as we have said, the claim was allowed as an "administration expense." 147 F.2d 40, at page 53. That cannot, however, disguise or change its legal basis; and to determine what that really was, requires some analysis of the situation out of which the original claim arose.

■ After a bankruptcy court assumes custody of a bankrupt's estate, it has power to enjoin all suits elsewhere which seek to dispose of, or adjudicate claims upon, his property;[2] and out of this power appears to have developed the notion that the court may stay a mortgagee from foreclosing, even in the bankruptcy court itself, if foreclosure will be to the prejudice of the unsecured creditors.[3] Pledged property is, however, ordinarily in the possession of the pledgee, and over it the bankruptcy court has no jurisdiction as such, and it is at most a doubtful question whether it may enjoin its sale in the interest of the unsecured creditors. For the purposes of this appeal, we will assume that it may not and that if this had been an ordinary bankruptcy the injunction would have been erroneously granted. It was not, however, an ordinary bankruptcy; a railway reorganization under § 77, 11 U.S.C.A. § 205, involves more than a distribution of the railway's unencumbered property; it covers the interest of pledgees and mortgagees, bringing them in as parties and, if need be, compelling them to accept such new securities in the place of the old as may be in the interest of all, provided these are a fair equivalent—§ 77, sub. b(1). In order to accomplish this it is obviously necessary to enjoin secured creditors from exercising their power of sale; and that was one of the points decided in Continental Illinois National Bank & Trust Co. v. Chicago, Rock Island & Pacific Railway Company.[4]

■ Thus the injunction issued by the district court, when it stayed the bank, was a step necessary to the preparation of a plan under § 77; the bank's original claim based upon the loss which resulted from it was not for damages caused by an erroneous injunction, and the injunction was proper. Indeed, if it had not been, we should have had no right to award damages for the loss caused by it, because, being the act of a court, it could not be an actionable wrong. We recognized that it was properly issued in Re New York, New Haven & Hartford Railroad Company,[5] when we dissolved this very injunction, not because it had been improvidently granted, but because the time had passed when "its discontinuance would hinder or obstruct reorganization in some substantial way." 102 F.2d at page 925. The resulting loss was therefore like a loss in general average: it proved to be a sacri-

---

[1] In re New York, New Haven & Hartford Railroad Company, 2 Cir., 147 F.2d 40, 47, 48.

[2] Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645.

[3] Straton v. New, 283 U.S. 318, 321, 51 S.Ct. 465, 75 L.Ed. 1060.

[4] 294 U.S. 648, 675-677, 55 S.Ct. 595, 79 L.Ed. 1110.

[5] 2 Cir., 102 F.2d 923.

fice imposed in invitum upon one party to a common undertaking. It is true that when the injunction was issued, it was intended as a benefit to the undertaking, but it imposed a risk upon the bank; and, since the effort miscarried and the risk was realized in a loss, the same considerations are relevant which should govern a loss deliberately imposed.

The claim which we disallowed in Warren v. Palmer,[6] was first, for legal services in securing recognition of that road's claim for damages caused by the repudiation of the lease of its road to the Old Colony Railroad; and second, in opposing the New Haven's claim to a lien on the Boston & Providence's road for a deficit while the New Haven receivers were operating it in conjunction with the Old Colony and the New Haven. So far as the claim was for the first kind of services, it was the same as a claim for legal services to establish any other charge against the debtor. The statute provides for the amortization of the future installments of rent—§ 77, sub. b(5)—and the aggregate of the discounted items is not different in any relevant respect from the original items themselves. As to the claim for services in opposing the lien, they were unsuccessful, for the New Haven prevailed, and it will be a rare occasion in which futile opposition to a step in the reorganization proceeding may be regarded as a legitimate cost of administration. The fact that we did not deem that opposition to be such an occasion has no bearing upon the case at bar. For these reasons we do not think that Warren v. Palmer, supra,[7] in either of those aspects in which it denied the claim, is contrary to our present ruling.

In Re Consolidated Motor Parts, Inc.[8] we sustained a claim against a debtor in reorganization under § 77B, 11 U.S.C. A. § 207, for services which resulted in bettering the position of one group of creditors—the "old creditors"—against another group—the "new creditors." Our reason was that any services which contributed to the preparation and approval of a "fair" plan were in the interest of all, and a proper charge upon the estate; and indeed in Warren v. Palmer, supra,[7] at the conclusion of our opinion, we left open just such a possible claim. True, this is a doctrine which cannot in every situation be pressed with inexorable consistency. A person who successfully establishes against the debtor a disputed claim may not add the cost of the services of his attorney; such a contest is an adversary proceeding, subject to the law of ordinary statutory costs. What services rendered in the interest of less than all the creditors will, and what will not, be a general charge we need not try to say in general terms; and we must own that there is undoubtedly language in Warren v. Palmer, supra,[7] contradictory to some of that in Re Consolidated Motor Parts, Inc., supra.[8] But the bank's original claim and its claim at bar stand upon a different footing from the claims before us in both those cases, and for the reasons we have given constituted proper charges of administration against the debtor.

Order reversed; claim allowed.